Jason HOLT and Jackson Reconstruction, Inc. *v.* Lona Horn McCASTLAIN, in her official capacity as Prosecuting Attorney of the 23rd Judicial District

04-343 182 S.W.3d 112

Supreme Court of Arkansas
Opinion delivered May 20, 2004

*Jeff Rosenzweig,* for appellant Jason Holt.

*Friday, Eldredge & Clark, LLP,* by: *William H. Sutton* and *T. Michelle Ator,* for appellant Jackson Reconstruction, Inc.

*Mike Beebe,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. On May 22, 2003, an automobile collision occurred in Lonoke County that resulted in the deaths of five occupants of one of the vehicles involved. Appellant Jason Holt was purportedly the driver of the second vehicle. Appellee Lona Horn McCastlain is the prosecuting attorney for the 23rd Judicial District, which includes Lonoke County within its jurisdiction. In the course of her investigation of the accident, Ms. McCastlain issued subpoenas to Jackson Reconstruction, Inc. (Jackson), a company hired by Mr. Holt's defense team that performed an accident reconstruction and prepared a report communicating the results of that reconstruction to Mr. Holt's attorneys. Both Mr. Holt and Jackson moved to quash the subpoenas, and the Lonoke County Circuit Court denied the motions. Mr. Holt and Jackson appeal, asserting that the circuit court erred in denying the motions to quash. We hold that the information subpoenaed by Ms. McCastlain is protected by attorney-client privilege pursuant to Arkansas Rule of Evidence 502, and we reverse the circuit court.

The facts were stipulated at the hearing on the motions to quash the subpoenas. After the accident, Mr. Holt's insurance carrier, State Farm Insurance, hired Sarah Presson of the Huckabay, Munson, Rowlett and Moore law firm (Huckabay) to represent Mr. Holt in civil actions that might potentially arise from the accident. In furtherance of that representation, Ms. Presson and other Huckabay attorneys have had privileged conversations with Mr. Holt. Ms. Presson retained Jackson to assist in the preparation of Mr. Holt's defense by performing a reconstruction of the accident. Ms. Presson provided information to Jackson in order that Jackson could provide assistance, and that information included disclosures made to Ms. Presson and other members of the Huckabay firm by Mr. Holt. All disclosures made by Mr. Holt to his attorneys, and by his attorneys to Jackson, were made with the understanding that Jackson would not disclose its reconstruction report or anything contributing to the report without the express permission of Mr. Holt or one of the attorneys. Mr. Holt directed

Ms. Presson to assert all applicable privileges and rights, and Ms. Presson, in turn, directed Jackson to do the same.

In the course of her investigation, Ms. McCastlain issued a subpoena *duces tecum* to Jackson, demanding a complete copy of the accident reconstruction report. In response to the subpoena, Ms. Presson instructed Jackson to assert attorney-client and attorney work-product privileges on behalf of Mr. Holt and the Huckabay firm. Mr. Holt and Jackson filed a petition for a protective order and a motion to quash the subpoena, asserting privilege and improper service. The subpoena was quashed on the ground of improper service and the circuit court did not address the issue of privilege.

Ms. McCastlain then served another subpoena *duces tecum* on Jackson. At Mr. Holt's direction, Jackson again asserted both attorney-client and attorney work-product privileges, as well as "all other constitutional protections." At that point, Mr. Holt filed the instant lawsuit in the Lonoke County Circuit Court against Ms. McCastlain and Jackson, seeking to intervene to protect his rights and quash the subpoena issued to Jackson. Jackson answered, agreeing that Holt should be allowed to intervene to protect his rights, and Ms. McCastlain moved to dismiss Mr. Holt's complaint. Jackson then also filed a motion to quash the subpoena, again asserting Mr. Holt's privileges, and Jackson also asserted that Ms. McCastlain's actions were an unconstitutional taking of its work product without compensation. Ms. McCastlain responded by issuing a subpoena to Terry Reynolds, the Jackson employee who was involved in performing the reconstruction for Mr. Holt and his attorneys. Mr. Holt and Jackson also moved to quash this subpoena on the same grounds.

On March 22, 2004, the circuit court held a hearing on the issues surrounding the prosecutor subpoenas. Mr. Holt's motion to intervene and to quash the second Jackson subpoena had been filed under a separate case number than the first motion to quash that was granted for improper service, so the circuit court first consolidated both cases under one number. After hearing evidence, the circuit court held that the prosecutor's subpoena is an investigatory tool and, as such, is not in itself a civil or criminal cause of action. The circuit court made the following conclusions of law:

> The Court holds that the issuance of the subpoena by Ms. McCastlain is not in itself a cause of action but rather merely an investigation. The Court further holds that the prosecutor's sub-

poena is neither exclusively criminal nor exclusively civil and is not governed either by the Arkansas Rules of Criminal Procedure or the Arkansas Rules of Civil Procedure. The Court further holds that invocations of privileges and constitutional rights by Mr. Holt and Jackson do not prohibit or defeat the prosecuting attorney's right to obtain evidence by use of the § 16-43-212 subpoena power. The Court holds that those claims may be made at a later date if either criminal charges or a civil lawsuit are filed against Mr. Holt.

The circuit court then ordered compliance with the subpoenas, denied all relief requested by Mr. Holt and Jackson, and stated that a refusal to provide the report or answer Ms. McCastlain's oral inquiries would subject Jackson and its representative to contempt sanctions. *Id.*

Mr. Holt appeals, asserting that the report and Terry Reynolds's testimony are protected from subpoena by the attorney-client privilege and the work-product privilege, and that disclosure of the report and testimony would interfere with his federal and state constitutional rights of assistance of counsel and due process, as well as his constitutional protections against self-incrimination and unreasonable searches and seizures. Mr. Holt also argues that the circuit court erred in its determination that privileges and constitutional rights cannot thwart a prosecutor's subpoena.[1] Jackson appeals the circuit court's decision, citing two points of error: (1) the circuit erred because the report and testimony are protected by privilege and Mr. Holt's constitutional rights; and (2) the prosecuting attorney does not have the authority to seize valuable property, but even if the authority exists, the prosecutor may not seize that property without compensation for the value of the property.

 This appeal presents questions of law pertaining to the interpretation of Arkansas Code Annotated § 16-43-212, in light of Ark. R. Evid. 502, Ark. R. Civ. P. 26, and Ark. R. Crim. P. 18.2, as well as the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and their counterparts in

---

[1] Mr. Holt makes an additional argument on appeal that the criminal discovery rule, Ark. R. Crim. P. 18.2, is not applicable to a prosecutor's subpoena when a case has not yet been filed by the prosecutor. However, the circuit court, in its ruling, agreed with Mr. Holt that the criminal discovery rules were inapplicable, and the State did not cross-appeal on this issue. Therefore, the circuit court's ruling on this issue stands unchallenged, and we do not address this point.

the Arkansas Constitution. Therefore, jurisdiction is proper in this court under Ark. Sup. Ct. R. 1-2(b)(3) and (6) (2004). Questions of law are reviewed *de novo* by this court. *Buckley v. State*, 349 Ark. 53, 762 S.W.3d 825 (2002). The trial court's findings of fact will not be set aside unless they are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52 (2003); *Crooked Creek, III, Inc. v. City of Greenwood*, 352 Ark. 465, 101 S.W.3d 829 (2003).

### Attorney-Client Privilege

Prosecutor McCastlain issued subpoenas pursuant to Ark. Code Ann. § 16-43-212, which states in part,

> (a) The prosecuting attorneys and their deputies may issue subpoenas in all criminal matters they are investigating and may administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them. Such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury.

Ark. Code Ann. § 16-43-212(a) (Repl. 1999).

Mr. Holt and Jackson claim that the report and the testimony of Terry Reynolds, who prepared the report, are privileged under Ark. R. Evid. 502, which states in pertinent part:

> (a)(1) A "client" is a person . . . who is rendered professional legal services by a lawyer, or who consults with a lawyer with a view to obtaining professional legal services from him.

> . . . .

> (3) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to engage in the practice of law in any state or nation.

> (4) A "representative of the lawyer" is one employed by the lawyer to assist the lawyer in the rendition of professional legal services.

> (5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself . . . and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative . . . .[2]

(c) Who May Claim the Privilege. The privilege may be claimed by the client . . . . The person who was the lawyer or the lawyer's representative at the time the communication is presumed to have authority to claim the privilege but only on behalf of the client.

Ark. R. Evid. 502 (2003).

Applying these definitions to the facts in this case, it is clear that Mr. Holt is a client, Ms. Presson and the Huckabay firm are his lawyers, and, because Jackson and its employee Terry Reynolds were hired by Ms. Presson "to assist the lawyer in the rendition of professional legal services," Jackson and its employees are Ms. Presson's representatives.

As to whether the report and testimony regarding the report were within the ambit of Rule 502, both parties stipulated at the hearing that the communications between Mr. Holt, Ms. Presson, and Jackson, and the report generated as a result of those communications as well as the testimony regarding the report, were always intended to be confidential communications. The circuit court's order found that the disclosures to Jackson were made, "with the understanding that Jackson would not disclose its report or anything contributing to the report without the express permission of Mr. Holt, Ms. Presson, or one of his other lawyers." Yet the circuit court concluded that attorney-client privilege did not protect the report from a prosecutor's subpoena. It seems this decision was based on findings made by the circuit court and abstracted as follows:

Does attorney client privilege defeat honoring the subpoena? That's, to me, the strongest argument in this court. But *it only defeats it if the communication is confidential. If the reconstruction report, if the testimony of the person who does the reconstruction report was never intended*

---

[2] The use of the word "between" shows that the privilege extends to communications made in either direction, without regard to which party is making and which is receiving the communication.

*to be disclosed, it was always intended to be a confidential thing, if it's a confidential communication, then 502 says prosecutor you don't get it.* But I find and conclude that *it was not a confidential communication. It was never intended not to be disclosed.* At least for purposes of this investigation. Does that mean the attorney-client privilege doesn't come back at some point, no. I can guarantee you it will probably come back up at some point. But right now we're just talking about an investigation.

(Emphasis added.)

■ In the hearing, the circuit court analyzed the question of confidentiality as being dependent upon whether or not the communication might ever be disclosed. If the report was intended to never be disclosed, the circuit court believed it would be confidential. On the other hand, if there was a chance it might be disclosed in the future, the circuit court found that it could not be a confidential communication. The written order entered by the circuit court does not mention the above analysis, and yet it seems clear that it was the circuit court's determination that the report was not confidential that led to its conclusion that privilege did not apply to the report. We believe this analysis, and the circuit court's resultant findings, are clearly erroneous.

■■ The privilege attached to a confidential communication under Rule 502 is held by the client, and that privilege may be waived. *See Poyner v. State,* 288 Ark. 402, 705 S.W.2d 882 (1986). Inherent in the idea of waiver of privilege is the understanding that the client is allowing disclosure of something that was previously privileged as a confidential communication. In other words, confidentiality is a characteristic of the communication *at the time* it is made, and the question of whether or not the privilege might be waived in the future is irrelevant for purposes of determining whether the communication was confidential when it was made. Here, both sides stipulated that the report was not to be disclosed by Jackson without the express consent of Mr. Holt. Therefore, at the time it was generated, the accident reconstruction report was a confidential communication per Rule 502(a)(5), and it is entitled to whatever protection is afforded by Rule 502. Furthermore, both parties stipulated that Mr. Holt, Ms. Presson, and Jackson have consistently claimed attorney-client privilege on behalf of Mr. Holt, so the privilege has never been waived. Therefore, all the elements necessary for invoking the privilege are

present, and the only question before us is whether or not the Rule 502 privilege applies to a prosecutor's investigative subpoena issued prior to the filing of charges. The circuit court found that, because a prosecutor's subpoena is merely an investigatory tool, privileges do not apply to the subpoena, though they may be reasserted at some point if a case is filed.

The U. S. Supreme Court has pointed out that "[T]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The purpose of the attorney-client privilege is to promote "full and frank communication" between attorneys and clients, and that, in turn, promotes the observance of law and administration of justice. *Id.* In the case of *Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998), the Supreme Court affirmed a trial court's decision to quash subpoenas issued by a grand jury at the request of a special prosecutor, holding that a grand jury was not entitled to confidential attorney-client communications even after the client's death. The Supreme Court's analysis is particularly enlightening for our current purposes:

> The Independent Counsel assumes, incorrectly we believe, that the privilege is analogous to the Fifth Amendment's protection against self-incrimination. But as suggested above, the privilege serves much broader purposes. Clients consult attorneys for a wide variety of reasons, only one of which involves possible criminal liability. Many attorneys act as counselors on personal and family matters, where, in the course of obtaining the desired advice, confidences about family members or financial problems must be revealed in order to assure sound legal advice. The same is true of owners of small businesses who may regularly consult their attorneys about a variety of problems arising in the course of the business. These confidences may not come close to any sort of admission of criminal wrongdoing, but nonetheless be matters which the client would not wish divulged.

> The contention that the attorney is being required to disclose only what the client could have been required to disclose is at odds with the basis for the privilege even during the client's lifetime. In related cases, we have said that the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place. [citations omitted.] This is true of disclosure before and

after the client's death. Without assurance of the privilege's posthumous application, the client may very well not have made disclosures to his attorney at all, so the loss of evidence is more apparent than real. In the case at hand, it seems quite plausible that Foster, perhaps already contemplating suicide, may not have sought legal advice from Hamilton if he had not been assured the conversation was privileged.

The Independent Counsel additionally suggests that his proposed exception would have minimal impact if confined to criminal cases, or, as the Court of Appeals suggests, if it is limited to information of substantial importance to a particular criminal case. However, there is no case authority for the proposition that the privilege applies differently in criminal and civil cases .... In any event, a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or a criminal matter, let alone whether it will be of substantial importance. Balance *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application. For just that reason, we have rejected use of a balancing test in defining the contours of the privilege.[3]

*Id.* at 407.

The same analysis the Supreme Court used in *Swidler* applies here. Mr. Holt made his confidential communications to Ms. Presson, who in turn made them to Jackson, believing they would not be disclosed. In order to assist in Ms. Presson's legal representation, Jackson took the information from those disclosures, went to the scene of the accident and made observations (that the State Police also made or could have made), then wrote a report that opined the expert's reconstruction of the accident. As in the *Swidler* case, it seems quite plausible that Mr. Holt would not have made communications to Ms. Presson, and Jackson would never

---

[3] The dissent urges just the sort of balancing test that was rejected by the U.S. Supreme Court in *Swidler & Berlin*, in its assertion that an *in camera* decision is reasonable "when you have two conflicting public policies — the prosecutor's right to investigate criminal activity versus the citizen's right to a privilege."

have been hired to generate an accident reconstruction report, if Mr. Holt had not been assured that his communications and the report were privileged.[4]

The State argues that Arkansas Rule of Evidence 502, which codifies the attorney-client privilege, does not apply to prosecutor's subpoenas, and cites to *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989), in support of this assertion. However, *McCambridge* does not support the State's argument. In *McCambridge*, the trial court found that documents found at the scene of a murder/suicide could be disclosed under the Freedom of Information Act after the case was closed. *Id.* Attorney-client privilege was invoked as to two letters in the file that were written to an attorney by the perpetrator before he killed himself. *Id.* We held that Rule 502 has no application outside of court proceedings and attorney-client privilege could not keep the letters from being released pursuant to the Freedom of Information Act. *Id.*

Using the holding in *McCambridge*, the State argues that Rule 502 likewise does not apply to a prosecutor's subpoena because it is not a "court proceeding." The applicability of the Arkansas Rules of Evidence is found within the Rules themselves:

Rule 101. Scope.

These rules govern proceedings in the courts of this State to the extent and with the exceptions stated in Rule 1101.

---

[4] The State argues that, even if attorney-client privilege applies to the report, the trial court should be allowed to examine the report *in camera* to redact any "confidential communications" from the report. However, the report itself was a confidential communication from Jackson to Mr. Holt's attorneys. The fact that it was a document made up of many statements does not change the fact that the observations and opinions of Terry Reynolds, as well as the factual descriptions of the reconstruction itself, are all communications made by Terry Reynolds to Mr. Holt's attorney. The cases cited by the State in support of this argument are not on point, and involved *in camera* examinations when grand juries subpoenaed large quantities of documents, and the trial court examined them in order to determine which *documents* were privileged, and a case involving the Freedom of Information Act in which privilege did not protect *government* litigation files. *See In re Grand Jury Proceedings (Malone)*, 655 F.2d 882 (8th Cir. 1981); *Schwimmer v. U.S.*, 232 F.2d 855 (8th Cir.), *cert. denied*, 352 U.S. 833 (1956); *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990).

The dissent's citation to *Orsini v. State*, 340 Ark. 665, 13 S.W.3d 167 (2000) is likewise inapposite because it did not concern privileged communications; instead, *Orsini* allowed an *in camera* review of potentially "sensitive" and "confidential" incident reports to determine whether the documents were subject to a Freedom of Information Act request. The reports in question were not protected by a legal privilege as the reconstruction report is in this case.

. . . .

Rule 1101. Rules applicable.

(a) Except as otherwise provided in subdivision (b), these rules apply to all actions and proceedings in the [courts of this State].

(b) *Rules Inapplicable.* The rules other than those with respect to privileges do not apply in the following situations:

(1) *Preliminary questions of fact.* The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a).

(2) *Grand jury.* Proceedings before grand juries.

(3) *Miscellaneous proceedings.* Proceedings for extradition or rendition; [preliminary examination] detention hearing in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

(4) Contempt proceedings in which the court may act summarily.

Ark. R. Evid. 101, 1101 (2003) (emphasis in original).

 Therefore, pursuant to Ark. R. Evid. 1101(b)(2), the rules of evidence with respect to privileges *do* apply to grand jury proceedings. In its brief, the State admits that prosecutor subpoenas are intended as a "substitute for questioning before a grand jury" and that "[g]rand juries are criminal proceedings." We hold, therefore, that the evidentiary rules with respect to privileges apply to prosecutor's subpoenas as the functional equivalent of grand jury proceedings. Accordingly, the attorney–client privilege embodied in Rule 502 applies to protect Jackson's reconstruction report from disclosure, and we reverse the circuit court and quash Ms. McCastlain's subpoena *duces tecum* that demanded the report.

As to the testimony of Terry Reynolds, the State argues that, even if Ark. R. Evid. 502 applies to prosecutor subpoenas, Rule 502 does not prohibit Ms. McCastlain from questioning Mr. Reynolds about "his observations and opinions." In support of this

contention, the State cites to *State v. Riddle*, 330 Or. 471, 8 P.3d 980 (2000), in which the Oregon Supreme Court held that the Oregon evidentiary rule governing attorney-client privilege did not prohibit an accident reconstruction expert from testifying about his observations and opinions, even though he was originally hired by the defense:

> We conclude that there is no absolute privilege, arising either out of [Oregon's attorney-client privilege rule], the work-product doctrine, or this court's cases, that prevents an expert whom a litigant has employed to investigate a factual problem from testifying for the other side as to the experts thoughts and conclusions that are segregated from confidential communications.
>
> . . . .
>
> We emphasize the limited nature of our ruling. We hold only that, under OEC 503(2)(a), the lawyer/expert relationship does not automatically disqualify an expert who was retained by one party from testifying for some other party. That expert is disqualified from testifying, however, if his or her opinion discloses, either directly or indirectly, *or is based on,* any confidential communication between the lawyer, the client, and/or the expert. *If an expert's opinion is so bound up with any such communication that the expert cannot, in the view of the trial court, segregate his or her opinion from some part of the confidential communication, then the expert should not be permitted to testify.*

*Id.* at 486–87, 8 P.3d at 989–90 (emphasis added).

The court in *Riddle* based its opinions on facts that, while similar, were markedly different in some respects from those in the instant case. First, the expert in *Riddle* had originally been employed by the defendant, but was terminated because his theory of the cause of the accident was not helpful to the defense. *Id.* Second, during informal settlement negotiations, the defendant's original trial lawyer had told the prosecutor of the expert's theories. *Id.* Third, the prosecutor had contacted the expert who disclosed his opinion to the prosecutor after "checking to make sure that it was not based on any privileged communication" from the defendant. *Id.* at 474, 8 P.3d at 983.

These facts are quite different from Mr. Holt's case, in which the accident reconstruction company has never been terminated, Mr. Holt's lawyer has not disclosed Reynolds's opinions to Ms.

McCastlain, and Mr. Holt, Ms. Presson, and Jackson all assert that Reynolds's work *was* based on privileged communications from Mr. Holt. On the basis of these differences, we do not believe the holding in *Riddle* is on point with the case at bar.

Much more instructive for our purposes is the case of *Commonwealth v. Noll*, 662 A.2d 1123 (1995), in which the Pennsylvania Superior Court held that information gathered by an accident reconstructionist during the period he was retained by the defendant was subject to attorney-client privilege. Affirming the trial court's grant of the defense's motion *in limine*, the appellate court quoted the trial court's ruling with approval:

> It would be patently unfair for the Commonwealth to base its reconstruction of the crash on information which its expert gathered while employed in the same capacity by Mr. Noll. There is no possible curative instruction in this situation. It would be impossible to point to particular portions of [the expert's] testimony which must be stricken or provide some general missive directing the jury to view the expert's testimony with caution. In addition, there is no particular prejudice to the Commonwealth from this ruling. Competent accident reconstruction experts are plentiful. There was absolutely no need to employ as the Commonwealth's expert someone who had previously investigated the accident for Mr. Noll.

*Id.* at 1126.[5]

In its holding, the Pennsylvania Superior Court went on to point out the differences between Mr. Noll's case and a case in which such testimony had been allowed on rebuttal to rehabilitate the testimony of another witness and corroborate the testimony of a police expert. *See Commonwealth v. Porter*, 569 A.2d 942 (1990). The court pointed out that the *Porter* decision found the defendant was not prejudiced by the testimony of his previous expert,

---

[5] Contrary to the dissent's suggestion, there is no indication in the *Noll* trial court's ruling that any "weighing" or "balancing" was performed. In fact, the Pennsylvania Superior Court concluded that, because the expert, Mr. Bowes, was retained by Noll's attorney to investigate an incident in order to provide legal advice, "any information regarding Mr. Bowes' investigation of the accident would be privileged." *Commonwealth v. Noll*, 662 A.2d at 1126. In this case, as in *Noll*, Jackson Reconstruction and Terry Reynolds were retained by Mr. Holt's attorney to investigate the accident in order that the attorneys could provide legal advice.

because the testimony was cumulative evidence; whereas, in Mr. Noll's case, the accident reconstructionist was to be the prosecution's key witness.

■ Here, as in *Noll*, Jackson and its employee, Terry Reynolds, have been hired by Mr. Holt, and have been provided Mr. Holt's confidential communications in order to reconstruct the accident in Lonoke County. Here, Mr. Reynolds's testimony is not being sought by Ms. McCastlain as cumulative, corroborating evidence or rebuttal evidence, but Ms. McCastlain is looking solely to Mr. Reynolds to find evidence with which to charge Mr. Holt. Again, as in *Noll*, the State could have hired an expert to perform an accident reconstruction for Ms. McCastlain's investigation. The failure of the State Police to have their expert perform a reconstruction does not entitle Ms. McCastlain to usurp Mr. Holt's privileged relationship with his attorneys and their representatives by using an investigative subpoena to compel Mr. Reynolds's testimony. We hold that the work Mr. Reynolds performed when employed to assist Mr. Holt's attorneys in his defense is protected by attorney–client privilege. Accordingly, Ms. McCastlain is not entitled to the observations and opinions of Terry Reynolds, and we reverse the circuit court and quash the subpoena issued to Terry Reynolds by Ms. McCastlain.

Reversed.

BROWN, J., dissents.

R OBERT L. BROWN, Justice, dissenting. As the majority correctly points out, this case involves a criminal investigation into the deaths of five people in a vehicular accident. The prosecutor, in the course of investigating these deaths, issued a subpoena for the accident reconstruction report prepared by Jackson Reconstruction, Inc. She clearly had the authority to issue a subpoena to investigate a criminal matter under state law. *See* Ark. Code Ann. § 16-43-212 (Repl. 1999). Holt, on the other hand, argues that the *entire* report is privileged under the attorney–client privilege and is therefore protected. The majority, without ordering a judicial determination of whether *all* of the report is indeed privileged, reverses the circuit court and bans the report from the prosecutor's investigation. I would not go that far but would remand the case for an *in camera* review of the report by the circuit court to decide whether, in fact, all of the report is privileged. The prosecutor asked for this relief in her response to motion to quash and brief in support of motion to dismiss

before the circuit court. If part of the report is privileged or the result of privileged communication, it should be struck. If not, it should in my judgment be subject to the subpoena.

My dissent in favor of an *in camera* review is based on two reasons. First, our criminal rules specifically contemplate *in camera* proceedings as does our case law. *See* Ark. R. Crim. P. 19.6; *Orsini v. State*, 340 Ark. 665, 13 S.W.3d 167 (2000) (this court held that an *in camera* review of a prison report by the circuit court was appropriate to determine if the report contained sensitive or confidential information under Department of Corrections regulations). But, secondly, an *in camera* decision by the circuit court is entirely reasonable when you have two conflicting public policies ( the prosecutor's right to investigate criminal activity versus the citizen's right to a privilege.

The majority cites no authority that militates against *in camera* review. In fact, the case authority goes the other way. In *State v. Riddle*, 330 Or. 471, 8 P.3d 980 (2000), the Oregon Supreme Court affirmed the trial court, which had determined *in camera* that an accident reconstructionist could testify, with limits on his testimony to protect the attorney-client privileges. That is precisely the situation we have before us.

The majority relies heavily on *Commonwealth v. Noll*, 443 Pa. Super. 602, 662 A.2d 1123 (1995), where the Pennsylvania Superior Court held that information gathered by an accident reconstructionist was subject to the privilege. But in that case the trial court, before trial, considered a motion *in limine* on the issue filed by the defendant that entailed weighing the potentially prejudicial and harmful evidence to determine whether curative instructions could not alleviate the adverse impact of the evidence on the jury. The trial court's evaluation in *Noll* is exactly what I champion in this case. Contrary to the majority's footnote, the Pennsylvania Superior Court expressly stated that the purpose behind the motion *in limine* was to weigh the evidence at issue and determine prejudice. That type of scrutiny by the trial court is what should be done in the instant case.

The majority also relies on the Unites States Supreme Court case of *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), to say that Holt would not have communicated with his attorney and Jackson Reconstruction would not have been hired to generate an accident reconstruction report had Holt not been assured that his communication and the report were privileged. *Swidler & Berlin*,

·however, is distinguishable from the situation at hand, because it concerned whether the attorney-client privilege survived the death of the client, rather than whether an accident reconstruction report can be subpoenaed by a prosecutor to further an investigation. Also, the Government in *Swidler & Berlin* sought the use of the attorney's notes that were taken during an initial interview with the deceased client to further a criminal investigation. Here, the prosecutor is not seeking Holt's attorney's notes, which would be protected under Ark. R. Evid. 502, but rather she is seeking an accident report created by Jackson Reconstruction. Again, the circuit court should have an opportunity to examine the report to determine whether any of it can be used by the prosecutor. The majority erroneously argues that my position is to balance competing policies. Rather, my position is that an *in camera* review would determine to what extent the privilege does apply.

This court goes too far when it hamstrings a prosecutor and fails to order an *in camera* review. It may be that the report is so bound up with the privileged communications that none of it can be made available to the prosecutor. The majority certainly makes this assumption when it bypasses an *in camera* review. On the other hand, certain non-privileged information and opinions relating to matters such as skid and gauge marks might be separate and apart from the asserted privilege.

This case is simply too important to shut the door on investigative material without a full *in camera* review. For all of these reasons, I respectfully dissent.