Mary SOWDERS *v.*
ST. JOSEPH'S MERCY HEALTH CENTER
and Sisters of Mercy Health System

06-414                                    247 S.W.3d 514

Supreme Court of Arkansas
Opinion delivered January 18, 2007

[Rehearing denied March 1, 2007.*]

---

\* BROWN, J., would grant rehearing.

*The Brad Hendricks Law Firm*, by: *Lamar Porter*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Justin Allen*, for appellees.

Jɪᴍ Hᴀɴɴᴀʜ, Chief Justice. This is a case involving the doctrine of charitable immunity. Appellant, Mary Sowders, appeals the orders granting summary judgment in favor of appellees, St. Joseph's Mercy Health Center and Sisters of Mercy Health System, St. Louis, Inc. On appeal, Sowders argues that the circuit court erred in (1) ruling that the liability pool administered by Sisters of Mercy did not constitute insurance for purposes of the direct-action statute, Ark. Code Ann. § 23-79-210 (Repl. 2004), (2) ruling that St. Joseph's was no longer subject to suit by virtue of this court's decision in *Low v. Insurance Company of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), and (3) finding that charitable immunity was not unconstitutional. This case was originally filed in the court of appeals; it was later transferred to this court on motion as the appeal presents an issue of first impression and involves a significant issue needing clarification or development of the law, or overruling of precedent. Thus, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1), (5). We find no error and, accordingly, we affirm.

*Facts*

Sowders was injured on January 18, 2002, after undergoing an outpatient procedure at St. Joseph's in Hot Springs. The injury allegedly occurred when hospital employees transported Sowders by wheelchair to a waiting car.

On August 13, Sowders filed suit against St. Joseph's, alleging negligence in prematurely discharging her after the procedure and failing to safely and properly transport her. St. Joseph's answered, claiming charitable immunity, and eventually filed a motion for summary judgment on that basis. Sowders responded and asserted that the recent cases of *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), and *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), accorded her the right to pursue the cause of action against the charity itself, at least to the point of obtaining a judgment. The circuit court was reluctant to allow Sowders to proceed to trial unless there was the potential to collect a judgment, as there was not traditional liability insurance itself, but a self-insurance pool that insured St. Joseph's. The circuit court granted Sowders time to conduct discovery as to the liability pool, which resulted in the production of the pool agreement itself and the deposition of Bernard Duco, senior vice-president and general counsel for Sisters of Mercy. Both parties subsequently briefed the issues, and the circuit court, following the decisions of *Scamardo* and *Clayborn*, ruled that Sowders would be allowed to continue to trial, finding that Sowders could potentially collect a judgment from the liability pool, as opposed to the charity itself.

Prior to Sowders's case proceeding to trial, this court decided *Low,* and overruled *Clayborn* and *Scamardo.* Thereafter, St. Joseph's renewed its motion for summary judgment. Sowders then amended her complaint, pursuant to the direct-action statute, and added Sisters of Mercy, the administrator of the pool agreement that provided a fund to pay tort claims against member hospitals.

The circuit court ruled that the pool agreement did not constitute liability insurance for purposes of the direct-action statute and dismissed Sisters of Mercy. The circuit court also granted St. Joseph's summary-judgment motion, based on the *Low* decision. Finally, the circuit court held that St. Joseph's, as a charitable facility, was not subject to suit, and rejected Sowders's argument that charitable immunity was unconstitutional under Arkansas law. Sowders now brings this appeal.

*Standard of Review*

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Here, the

relevant facts are not in dispute, and the parties agree that this appeal presents only questions of law, which this court reviews de novo. *Craven v. Fulton Sanitation Serv., Inc.,* 361 Ark. 390, 206 S.W.3d 842 (2005). The circuit court's findings of fact will not be set aside unless they are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52; *Holt v. McCastlain,* 357 Ark. 455, 182 S.W.3d 112 (2004).

### Doctrine of Charitable Immunity

In *Low, supra,* we thoroughly discussed the development of the doctrine of charitable immunity; therefore, we need not discuss it in great detail here. However, before addressing Sowders's arguments, a brief review of the charitable-immunity doctrine is necessary. "The essence of the [charitable-immunity] doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust." *George v. Jefferson Hosp. Ass'n, Inc.,* 337 Ark. 206, 211, 987 S.W.2d 710, 712 (1999) (citing *Crossett Health Ctr. v. Croswell,* 221 Ark. 874, 256 S.W.2d 548 (1953)).

Based upon the *Clayborn* court's distinction, albeit in dicta, between immunity from suit and immunity from liability, this court allowed the plaintiff in *Scamardo* to sue a charitable organization; however, the plaintiff could not collect on any judgment because the charitable organization was immune from execution. In *Low,* we overruled *Scamardo,* as well as the earlier dicta in *Clayborn,* and held that plaintiffs could not bring suit against charitable organizations.

Plaintiffs alleging injury by charitable organizations can bring suit against the charities' liability insurers via the direct-action statute, Ark. Code Ann. § 23-79-210. Further, injured plaintiffs may bring suit against employees of charitable organizations.

### Whether the Liability Pool Constitutes Insurance for Purposes of the Direct-Action Statute

Sowders argues that the circuit court erred in ruling that the liability pool administered by Sisters of Mercy did not constitute insurance for purposes of the direct-action statute. St. Joseph's is a member of the Sisters of Mercy Health System, St. Louis Pooled Comprehensive Liability Program (Program). The purpose of the

Program "is to provide the corporations controlled by the Sisters of Mercy Health System, St. Louis, Inc., and certain other entities and individuals . . . a mechanism to evaluate and defend claims of liability and to centralize the handling of such claims and accumulate funds for the payment of those potential losses." The Eighth Circuit Court of Appeals has explained the Program, as it applied to another member, St. John's Regional Health Center in Missouri,[1] as follows:

> The Saint Louis Province of the Sisters of Mercy, through the Sisters of Mercy, Inc., manages, operates, and controls a multi-state network of nonprofit hospitals. St. John's is one of those hospitals. The Sisters of Mercy, Province of St. Louis, Self-Insurance Trust is a fund from which tort liabilities incurred by its hospitals (business units) are to be paid. Sisters of Mercy, Inc., maintains this fund by pooling assessments from each business unit, based on that hospital's past history of claims and on future risk projections. The funding of the pool is reassessed periodically on the basis of the amount each hospital has paid into the fund, and the amount each has needed to withdraw. The fund covers only hospitals controlled by the Saint Louis Province of the Sisters of Mercy or one of its business units. If a hospital leaves the fold of the Saint Louis Province of the Sisters of Mercy, it may no longer participate in the fund and the fund will no longer protect it.

*St. John's Reg'l Health Ctr. v. Am. Cas. Co.*, 980 F.2d 1222, 1225 (8th Cir. 1993) (internal citations omitted).

The Program further provides that it "does not furnish the Participants or Indemnitees with a contract of insurance." Despite this language, Sowders contends that the Program is insurance and that Sisters of Mercy is a liability insurer for the purposes of Arkansas's direct-action statute. Thus, she claims that she has a right to sue Sisters of Mercy under the direct-action statute. Pursuant to the direct-action statute, when "liability insurance" is carried by an organization not subject to suit for tort, individuals claiming damage as a result of the negligent acts of the organization or its employees "shall have a direct cause of action against the insurer with which liability insurance is carried." Ark. Code Ann. § 23-79-210(a)(1) (Repl. 2004). The statute does not require the organization not subject to suit for tort to carry liability insurance;

---

[1] St. Joseph's and St. John's are members of the same pooled-liability program.

rather, it provides for a direct action against the insurer by the injured or damaged person in the event liability insurance is so carried. Ark. Code Ann. § 23-79-210(c)(1).

As used in the Arkansas Insurance Code, unless the context otherwise requires:

(1)(A)(i) "Insurance" is any agreement, contract, or other transaction whereby one party, the "insurer," is obligated to confer benefit of pecuniary value upon another party, the "insured" or "beneficiary," dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such an event.

(2) "Insurer" includes every person engaged as an indemnitor, surety, or contractor in the business of entering into contracts of insurance.

Ark. Code Ann. § 23-60-102.

We have not previously addressed the issue of whether an organization such as Sisters of Mercy, as administrator of the Program, is an insurer, and thus, subject to suit, for the purposes of the direct-action statute. However, in deciding whether a particular agreement fits the definition, we have focused on the following three factors: (1) whether the plan is mandatory; (2) whether a profit motive exists in offering the plan; and (3) whether the plan is intended to be actuarially sound. *Cherry v. Tanda*, 327 Ark. 600, 940 S.W.2d 457 (1997); *Douglass v. Dynamic Enters. Inc.*, 315 Ark. 575, 869 S.W.2d 594 (1994); *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992). In *Cherry, supra*, the City of Fort Smith entered into a contract with Tanda, Inc., for the construction of a sanitary landfill. As part of the agreement, Tanda agreed to indemnify the city for all claims and damages arising out of the performance of the contract. During the construction, the walls of the excavation site collapsed, causing the death of a Tanda employee, David Cherry. Howard Cherry, as administrator of the estate of David Cherry, filed a wrongful-death action against Tanda pursuant to the direct-action statute, alleging that Tanda was an insurer of the City. Tanda filed a motion to dismiss, and the trial court granted the motion. On appeal, Cherry argued that Tanda, pursuant to the indemnification agreement, was the City's insurer such that he could maintain a direct action against Tanda. We disagreed, stating:

The basic flaw in Cherry's argument is that the Arkansas Insurance Code specifically defines an insurer as "every person engaged as indemnitor, surety, or contractor *in the business of entering into contracts of insurance.*" Ark. Code Ann. § 23-60-101 (Repl. 1994).

Tanda is "in the business" of construction, not insurance, and the indemnification agreement was a mere incidental obligation of its contractual relationship with the City as a contractor. In other words, Tanda is not "in the business of entering into contracts of insurance" as required by the statute, and thus, Cherry cannot maintain a direct action under Ark. Code Ann. § 23-79-210 against Tanda as insurer of an immune entity.

*Cherry,* 327 Ark. at 611, 940 S.W.2d at 461-62 (emphasis added). Additionally, we noted:

In this case, Tanda was not receiving money in exchange for its promise to indemnify nor was the plan actuarially sound. In fact, the indemnity plan was a liability, not an asset to Tanda. Finally, in the construction contract, the City agrees to obtain its own liability and property insurance. Hence, it is clear that the parties never intended Tanda to be the "insurer" of the City. Under these circumstances, we decline to construe the indemnity agreement as an insurance contract, and thus Cherry is not entitled to maintain a direct action as an "insurer" of the City.

*Id.* at 612, 940 S.W.2d at 462.

In *Waire, supra,* a case involving governmental immunity, Waire filed suit against the Searcy School District, two of its employees, and the Arkansas School Boards Insurance Cooperative (ASBIC) after her son was injured during track practice. Waire alleged that an agreement between the school and the ASBIC was a policy of insurance, thereby allowing her to bring a direct action against ASBIC. The trial court disagreed, and this court affirmed. In affirming, we emphasized that the agreement expressly stated that it was not an insurance policy. We noted that the agreement provided that the participants "intend only to jointly retain losses associated with specified risks and perils and do not intend to conduct the business of insurance." *Waire,* 308 Ark. at 531, 825 S.W.2d at 596. In addition, we rejected Waire's argument that ASBIC was an insurer, noting that the school district was not required to enter into a contract with ASBIC, that ASBIC was not operated for profit, and that ASBIC was not actuarially sound.

The appellees contend that, under *Cherry*, Sisters of Mercy is not an insurer, and the Program is not insurance. They contend that Sisters of Mercy is not in the business of entering into contracts of insurance, is not subject to any of the insurance laws and regulations of the State of Arkansas, and does not profit from the Program. They further contend that, as noted in the Program document itself, the parties never intended for the Program to be insurance. Sowders does not dispute this argument; in fact, she fails to address the three-factor test in her brief. Rather, she attempts to distinguish the *Waire* case from the instant case, stating that the agreements in *Waire* (1) contained no absolute promise to indemnify, (2) did not purport to provide general tort liability, and (3) provided protection for parties that had governmental immunity.

We find Sowders's argument unconvincing. Even though there are distinctions between the terms of the agreements in *Waire* and the instant case, the *Waire* case is of no help to Sowders because in *Waire*, just as in *Cherry*, to determine whether the agreements fit the definition of insurance, we followed the three-factor test.

■ Here, the Program is not mandatory, and Sowders offers no evidence that a profit motive exists in the Program or that the Program is actuarially sound. In short, under the three-factor test, the Program does not meet the statutory definition of insurance. Moreover, because Sisters of Mercy is not in the business of entering into contracts of insurance, it does not meet the statutory definition of an insurer under the Arkansas Insurance Code.

We also find persuasive the Eighth Circuit Court of Appeals's construction of the Program in the *St. John's* case. In that case, a nurse and St. John's Regional Health Center were sued for malpractice. *St. John's*, 980 F.2d at 1223. St. John's defended the action, but American Casualty, the nurse's insurer, refused to defend based on a clause in its policy declaring that it bore no obligation to defend the nurse if the nurse had "other insurance." *Id.* In St. John's suit against American Casualty for indemnification, the issue was whether, under Missouri law, the Program administered by Sisters of Mercy constituted "other insurance" within the meaning of the American Casualty policy. *Id.*

The Eighth Circuit concluded that the Program was not within the plain meaning of the term "insurance." *Id.* at 1226. Rather, it found the Program to be "self-insurance" and noted that "[s]elf-insurance is the retention of the risk of loss by the one upon whom it is . . . imposed by law or contract." *Id.* at 1225

(quoting *Physicians Ins. Co. v. Grandview Hosp. & Med. Ctr.*, 542 N.E.2d 706, 707 (Ohio Ct. App. 1988)). The court also pointed out that the Program was "structured to have each business unit eventually cover the liabilities it generates." 980 F.2d at 1225 n.5. Instead of "risk-spreading" across the pool, which is generally understood to be insurance, the Program spreads risk over time. *Id.*

■ Again, the Program at issue in the *St. John's* case is also at issue in the instant case and, while *St. John's* was analyzed under Missouri law, we agree with the federal court's conclusion that the Program is not within the plain meaning of the term "insurance." *Id.* at 1224. Rather, it is a form of self-insurance and is structured to have each member of the Program eventually cover its own liabilities. *See id.* at 1225 n.5. We hold that the Program does not constitute insurance for the purposes of the direct-action statute.[2] The circuit court did not err in granting summary judgment in favor of Sisters of Mercy.

### *Application of the* Low *Case*

■ Sowders argues that, should this court find that the direct-action statute is inapplicable in this case, then she should be allowed to proceed against St. Joseph's "per *Clayborn*" and not be subjected to retroactive application of the *Low* decision in such a manner as to destroy her cause of action. The appellees argue that the *Low* case did not strip Sowders of a remedy and that the difference between the application of *Clayborn* and *Low* is purely procedural. We agree. As previously noted, in *Clayborn*, this court stated, albeit in dicta, that plaintiffs could sue charitable organizations; however, plaintiffs could not collect on any judgments because charitable organizations were immune from execution. In *Low*, we overruled the dicta in *Clayborn*, as well as our decision in *Scamardo*, and held that plaintiffs could not bring suit against charitable organizations. If the rule in *Clayborn* were applied in this case, then Sowders would be allowed to bring suit against St. Joseph's, but she would not be allowed to collect on any judgment

---

[2] Our holding with respect to this issue is based upon our construction of the terms "insurance" and "insurer." We believe the General Assembly should consider whether the direct-action statute should be amended to include pooled-liability programs, such as the Program in the instant case.

because St. Joseph's assets are immune from execution; the end result would be that Sowders would not recover any damages from St. Joseph's. Under *Low*, Sowders cannot bring suit against or collect a judgment from St. Joseph's; the end result is that Sowders cannot recover damages from St. Joseph's. Sowders's claim against St. Joseph's is no less valuable under the holding in *Low* than it was before *Low*; thus, the application of the rule in *Low* does not result in any unfair prejudice to Sowders.

■ Further, even if Sowders were allowed to proceed to trial and obtain a judgment against St. Joseph's, the Program would not indemnify St. Joseph's. The plain language of the Program provides that it will indemnify St. Joseph's only to the extent that it is "legally obligated to pay." By virtue of its charitable-immunity status, which Sowders does not challenge, St. Joseph's has no legal obligation to pay. Thus, it follows that the Program will not provide indemnity.

### Constitutionality of the Charitable-Immunity Doctrine

Sowders next argues that the circuit court erred in finding that the charitable–immunity doctrine was constitutional. In support of this argument, Sowders cites article 2, § 13 of the Arkansas Constitution, which provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property, or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without denial; conformably to the laws.

Sowders claims that, because she cannot bring suit against either St. Joseph's or Sisters of Mercy, then she is deprived of a remedy for the injuries she suffered. The appellees argue that Sowders's recovery is merely limited in this case, not barred; therefore, her constitutional argument must fail. The appellees contend that, while Sowders cannot file a direct–action claim with Sisters of Mercy due to the absence of liability insurance, and while she cannot file suit against St. Joseph's due to its charitable immunity, she could have filed claims against the individual employees of the charity who allegedly engaged in the negligent conduct. Indeed, individuals alleged to have caused the injuries by their negligence are not immune to a suit for damages. *See Low*, *supra* (citing *Helton v. Sisters of Mercy*, 234 Ark. 76, 351 S.W.2d 129 (1961)).

█ Here, Sowders failed to bring claims against the individual employees. The record reveals that the Program at issue would have indemnified the individual employees alleged to have caused her injuries. Sowders states that it makes no sense to accept the traditional public policy behind charitable immunity as protecting and preserving the assets of the charity when an injured party may collect from a fund that indemnifies both hospital employees and the hospital, but only if the employees are sued. In other words, Sowders argues that "[t]he money all comes from the same fund," so it should not matter whether the hospital is sued or its employees are sued. While we are sympathetic to Sowders's frustration, the fact remains that the basis of her constitutional argument is that she has been denied a remedy for her injuries in violation of article 2, § 13 of the Arkansas Constitution. Because Sowders was free to bring suit against the employees, we cannot say that she has been denied a remedy.

Finally, Sowders argues at length in her brief on appeal that we should abandon precedent and abolish the doctrine of charitable immunity because it is against public policy. The record reveals that the circuit court never ruled on Sowders's argument regarding public policy. We will not review an issue where the circuit court has not first decided it. *See Farm Bureau Policy Holders v. Farm Bureau Ins. Co. of Ark., Inc.*, 335 Ark. 285, 984 S.W.2d 6 (1998). We add that, while we are unable to reach the issue in this case, we again call on the General Assembly to consider whether the charitable immunity doctrine should be abolished. *See Scamardo*, 356 Ark. at 248, 149 S.W.3d at 318, *overruled on other grounds by Low, supra.*

In sum, we hold that the circuit court did not err in granting summary judgment in favor of St. Joseph's and Sisters of Mercy.

Affirmed.

BROWN, J., dissents.

R OBERT L. BROWN, Justice, dissenting. The majority's opinion is troublesome because Mary Sowders has been whipsawed by the decisions of this court and is now left without a remedy. This appears unfair and unjust to me, and for that reason, I dissent.

The sum and substance of what has occurred here is that the majority has affirmed the doctrine of charitable immunity as applied to St. Joseph's Mercy Health Center. Though Arkansas is

one of the last states to adhere to total immunity for hospitals, *see* Janet Fairchild, Annotation, *Tort Immunity of Nongovernmental Charities — Modern Status*, 25 A.L.R. 4th 517 (1983), this court has justified it in the past because injured parties could sue the hospital's insurance carrier directly. *See, e.g., George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 214-15, 987 S.W.2d 710, 714 (1999). ("Permitting hospitals such as JRMC to raise this [charitable immunity] defense may seem harsh to injured parties, but our laws provide a remedy in such cases whereby the entity's insurance carrier may be sued directly.") What is most disturbing today is the majority's interpretation of the direct-action statute, which takes that remedy away from Mary Sowders.

This court has said in the past that we will give the charitable immunity doctrine a very narrow construction. *See Williams v. Jefferson Hosp. Ass'n, Inc.*, 246 Ark. 1231, 442 S.W.2d 243 (1969). We have further been adamant that we will construe our direct-action statute liberally to effectuate its purposes because it is remedial in nature. *See Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996). Today's decision is at odds with these past pronouncements. What follows are my specific disagreements with specific conclusions reached by the majority.

*a. Failure to liberally construe the direct-action statute.*

This court has not previously addressed the application of the direct-action statute (Ark. Code Ann. § 23-79-210 (Repl. 2004)) to liability pools like the Sisters of Mercy that provide indemnification for the liabilities of member hospitals. The Eighth Circuit Court of Appeals's decision in *St. John's Regional Health Center v. American Casualty Co.*, 980 F.2d 1222 (8th Cir. 1992), does not answer this question for us as the majority would have it. First, Eighth Circuit decisions are not binding on this court, and, second, the *St. John's* decision did not deal with the Arkansas direct-action statute, which, as already mentioned, this court liberally construes.

The two cases relied on by the majority (*Cherry v. Tanda*, 327 Ark. 600, 940 S.W.2d 457 (1997); *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992)) are sovereign immunity cases and did not involve the issue of "charitable" hospitals. The third case (*Douglas v. Dynamic Enters., Inc.*, 315 Ark. 575, 869 S.W.2d 14 (1994)) did not deal with the direct-action statute. Simply put, these cases are not controlling.

If this state is going to retain charitable immunity for hospitals, then the direct-action statute must be liberally construed so that injured parties can reach the funds set aside for the indemnification of a hospital's liabilities no matter what form those funds take, whether they are traditional liability insurance paid for through premiums, or a liability pool to which the hospital contributes. By choosing not to carry traditional liability insurance, St. Joseph's has sidestepped the system and now cannot be held liable for its negligence in any way, either through the payment of increased insurance premiums or through the loss of funds contributed to the liability pool.[1] It is only mete and right that the direct-action statute be liberally construed in charitable immunity cases to include liability pools, such as the Sisters of Mercy's fund, so that injured plaintiffs are not left without a remedy for hospital negligence.

*b. The suit against the employees was not an adequate remedy.*

It is true that Mary Sowders could have filed suit against the individual employees and collected at least some amount from the liability pool. The majority holds that this was an adequate remedy under our state Constitution. The majority, however, does not address how this would be an adequate remedy in the case of institutional negligence by the hospital. It is St. Joseph's contention that there is no such thing as institutional negligence, as any act of negligence can always be traced to an individual. I disagree. Not having appropriate procedures, rules, or protocols in place for situations like those experienced by Mary Sowders can be laid directly at the feet of the hospital, and not its employees. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Knight,* 297 Ark. 555, 764 S.W.2d 601 (1989) (allegations against hospital included negligence in the hiring, supervising, and retaining of a certain employee). Yet, such institutional negligence and this avenue of relief are discounted by the majority, inappropriately in my opinion.

*c. Preservation.*

The majority opinion makes a distinction between Sowders's argument that charitable immunity is unconstitutional because there is no remedy against St. Joseph's and her argument that

---

[1] Each member of the liability pool contributes to the pool an amount assessed by Sisters of Mercy based on the hospital's past history of claims, its future risk assessment, the previous amounts paid, and the amount each has needed to withdraw. Therefore, hospitals that cannot be sued, such as St. Joseph's, are required to pay less into the fund.

charitable immunity should be abolished across the board for public policy reasons. The majority opinion does not discuss or analyze abolition of charitable immunity for hospitals, because it states that Sowders never obtained a ruling on the issue from the circuit court. I agree with the majority that Sowders made two distinct arguments. However, I disagree that Sowders did not obtain a ruling from the circuit court on her policy argument about doing away with charitable immunity. Sowders never obtained a specific written ruling from the circuit court stating that the policy reasons for charitable immunity still apply, but the circuit court did rule that St. Joseph's was entitled to the protections afforded by charitable immunity. I believe this is a sufficient ruling from the circuit court that the policy reasons behind charitable immunity apply in this case, and, thus, this court could have reviewed that issue.

*d. Conclusion.*

Because the majority has refrained from reconsidering the issue of charitable immunity for hospitals like St. Joseph's, which are significant business enterprises, it falls to the General Assembly to do so. We have called on the General Assembly to do so in the past. *See Scamardo v. Jaggers*, 356 Ark. 236, 144 S.W.3d 311 (2004) *overruled on different grounds by Low v. Ins. Co. of N. Am.*, 364 Ark. 427, 220 S.W.3d 670 (2005). It is appropriate to call on the legislative branch again.

Moreover, because of the majority's refusal to liberally construe the direct-action statute to include liability pools, such as the Sisters of Mercy fund, this also should be considered by the General Assembly.

Again, this opinion today is very troublesome. I respectfully dissent for the above-stated reasons.