Christy Suzanne VIDOS *v.* STATE of Arkansas

CR 05-898                                          239 S.W.3d 467

Supreme Court of Arkansas
Opinion delivered September 21, 2006

[Rehearing denied November 2, 2006.*]

---

* IMBER, J., not participating.

*Jeff Rosenzweig* and *Cindy M. Baker*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

J IM GUNTER, Justice. This appeal arises from the conviction and sentence of appellant, Christy Suzanne Vidos, by a Boone County jury for the death of her estranged husband, Lloyd Vidos. Appellant was convicted of capital murder, a violation of Ark. Code Ann. § 5-10-101 (Repl. 1997), a Class Y felony, and tampering with physical evidence, a violation of Ark. Code Ann. § 5-53-111 (Repl. 1997), a Class D felony. Appellant was sentenced to life imprisonment without parole with six years to be served concurrently on the tampering charge. On appeal, appellant makes six allegations of error. We affirm the jury's verdict.

Appellant and Vidos were married, had two children, and lived in Berwick, Louisiana. After some time, the marriage became strained, and the two separated. Appellant moved back to Boone County with her boyfriend, Leslie Paray, and Vidos filed for divorce. Appellant later had a child with Paray, and they were married in Boone County prior to the divorce being finalized.

In July of 2002, appellant and her parents, Jonny Cris and Sharon Acuff, traveled back to Berwick to collect some of appellant's personal property. Vidos traveled with appellant back to Boone County in a U-Haul truck. When they arrived in Boone County, appellant and Vidos were supposed to go to the Acuff residence on Daniels Road, but instead, they went to a vacant

house on her parents' property on Shake Rag Hollow Road, which is located in an isolated, rural area of Boone County. She left Vidos there, and she and Paray returned to the vacant house. Appellant's father later picked up his daughter at the vacant house, but Vidos was not there.

Metz Vidos, the victim's father, notified Louisiana law-enforcement officials that his son was missing. On August 8, 2002, the Berwick Police Department contacted the Boone County Sheriff's Office, requesting assistance in locating the victim. His father stated that, in a cell phone conversation on August 3, 2002, his son told him that he was in front of a vacant, white house on the Acuff property. Mr. Vidos had not been able to reestablish contact with his son after that phone call. Further, Mr. Vidos discovered that his nine millimeter handgun was missing.

On August 9, 2002, officers from the Boone County Sheriff's Office conducted a search of the area. That afternoon, Captain Mark Rupp contacted Donna Phillips, a Fayetteville attorney, who told the officer that Scott Acuff, appellant's brother, told her where the body was located. Phillips described a location on the Acuff property on Shake Rag Hollow Road. Officers responded and located the decomposing body of the victim approximately .6 miles off the road in a hollow amidst rugged terrain. After discovering the body, officers contacted Phillips again and interviewed her. She advised them that appellant and others were present at the office. Phillips stated that appellant said that she "stumbled" upon the victim's body. According to Phillips, appellant, after telling her parents, contacted Phillips, and Phillips advised appellant to contact the Boone County Sheriff's Office and report the information she knew. The officers surmised that it would be unlikely for someone to "stumble" across a body in this particular remote location that was accessible primarily by four-wheel vehicles.

Officers conducted an examination of the scene approximately .2 miles from the residence on Shake Rag Hollow Road and found an area that appeared to be scraped by a front-end loader. They also found a small round clock with Velcro on the back, as well as a cardboard tag for a pair of work gloves. Officers also noticed that trees had been pushed down by a tractor. Later, near the Acuff's residence on Daniels Road, officers found a tractor with a strip of Velcro that matched the clock and thistles in the radiator of the tractor that matched the thistles in the field where the body was found.

A search warrant was executed on the pickup truck belonging to appellant's father, which was identified as having been driven by Paray. There, officers discovered work gloves that matched the cardboard tag, and a shovel and other tools, which contained blood, were discovered in the bed of the truck. Officers also discovered a block of wood containing hair or fibers in the truck.

On August 9, 2002, Jonny Cris Acuff, appellant's father, was interviewed by the Boone County Sheriff's Office and originally denied any knowledge of the murder. However, Acuff later stated that he and Paray drove the tractor, and he saw the scraped area where the clock was found. He saw flies in the area and detected a strong odor. The next day, Acuff talked with his wife, who told him that "it" had been moved. When he asked what "it" was, she replied, "Lloyd's body." Acuff also told officers that his daughter came to him on August 4, 2002, and asked him to teach her to drive the tractor.

On August 10, 2002, Sharon Acuff, appellant's mother, was interviewed at the Boone County Sheriff's Office. She stated that on August 6, 2002, appellant and Paray discussed moving the victim's body. She also stated that the victim had given appellant a nine millimeter handgun prior to the shooting. She revealed that appellant told her several different stories, including that the victim wished to commit suicide. Acuff further stated that, on August 9, 2002, Paray had told her that he shot the victim two times with a nine millimeter handgun and had killed Vidos. Paray told appellant's mother that he shot the victim at the abandoned house on Shake Rag Hollow Road.

On August 15, 2002, appellant was charged with capital murder and tampering with physical evidence. The State alleged that appellant acted with Leslie Paray in shooting Lloyd Vidos and in hiding his body. Appellant's parents were charged with hindering apprehension or prosecution. The charge against Jonny Cris Acuff was *nolle prossed*, and Sharon Acuff was placed on probation. Leslie Paray pleaded guilty to first-degree murder and was sentenced to life imprisonment.

On June 3, 2004, appellant filed a motion to suppress her custodial statements made to Kenneth Barnes, a jailer, and her statements to Phillips, which were disclosed to the State during its investigation. Appellant also filed a motion to prohibit the testimony of Donna Phillips and a motion to suppress the evidence

obtained at the scene. Subsequent amended and supplemental motions were filed.

An order was entered on November 3, 2004, denying appellant's motion to suppress the statement to the jailer, denying the statements made to Donna Phillips, and denying the motion to suppress physical evidence obtained from the Shake Rag Hollow property.

Appellant's jury trial was held in November 2004, but a mistrial was declared. On January 24, 2005, a retrial was conducted, and the jury found appellant guilty of capital murder and sentenced her to life imprisonment with six years concurrent for the tampering charge. On January 13, 2005, the circuit court entered a judgment and commitment order. From this order, appellant brings her appeal.

### I. Motion to suppress

For her first point on appeal, appellant argues that the circuit court erred in refusing to suppress appellant's statement to a jailer. Specifically, appellant contends that the admission of the statement violated her Fifth and Sixth Amendment rights, as well as the analogous state constitutional guarantees under Article 2, §§ 8 and 10 of the Arkansas Constitution. Appellant asserts that she was not adequately warned that the statement would be used against her, as guaranteed by the Fifth Amendment. The State responds, arguing that appellant's Sixth Amendment rights were not violated because she initiated communication with the police.

The appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession is that we make an independent determination based upon the totality of the circumstances. *Johnson v. State,* 366 Ark. 8, 233 S.W.3d 123 (2006). A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Jones v. State,* 344 Ark. 682, 42 S.W.3d 536 (2001); *Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003). In order to determine whether a waiver of *Miranda* rights is voluntary, we look to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.*

Both the Fifth and Sixth Amendments provide a right to counsel. *Davis v. State,* 330 Ark. 76, 83, 953 S.W.2d 559, 562 (1997). Under the Fifth Amendment, the right to counsel is

derived from the amendment's prohibition against self incrimination while in custody. *See Miranda v. Arizona,* 384 U.S. 436 (1966). In other circumstances, there may be a Sixth Amendment right to counsel. *See Kirby v. Illinois,* 406 U.S. 682 (1972) (Sixth Amendment right to counsel at critical stages of the prosecution). Once a defendant invokes his Fifth Amendment right to counsel at a custodial interrogation, the police may not interrogate any further until counsel is provided, or the defendant initiates further communication. *Michigan v. Jackson,* 475 U.S. 625 (1986). However, an accused may waive her rights by initiating further communication with the police. *Id.* at 636.

Once the defendant initiates further communication, exchanges, or conversations with the police, any resulting statement may be admissible. *Edwards v. Arizona,* 451 U.S. 477 (1981). In *Edwards,* the Supreme Court held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.*

With these legal principles in mind, we turn to the present case. Here, appellant made a statement to Boone County jailer, Kenneth Barnes, on August 19, 2002. On August 22, 2003, Barnes made a statement, which was admitted into evidence at the hearing, in which he recounted the following events:

> [Appellant] was reading the newspaper about when Leslie Paray went to court. . . . She went on to say that she didn't understand how they could get them for premeditated murder when it "just happened." She told me about how Paray was hiding in the weeds as Lloyd Vidos started walking over to the car she was in when Paray shot him in the chest. At this point in time, I said, "What?" I couldn't believe she was talking openly to me about the murder. I explained to her that she shouldn't talk to me any more about this since I was a jailer. However, she kept going on about how Paray was drunk and had take some Vicodins. She stated Paray wasn't in his right mind. She also said that Lloyd Vidos had molested her older girl, and that Paray was mad and in a rage about it. She then stated that Paray was hiding when he shot Lloyd Vidos in the chest. She went on to say that Mr. Vidos was suffering as a result of the shot to his chest so Paray shot Mr. Vidos again in the back of his head to end his suffering.

Add. 215.

■ Appellant asserts that Barnes reasonably believed that appellant's statement would be used against her. In her brief, appellant admits that she was in custody and that she reasonably believed Barnes to be a law-enforcement officer. However, based upon Barnes's statement, appellant clearly initiated communication with the police. Appellant, after reading an article in the paper about the murder, divulged to Barnes specific facts concerning the murder, specifically that Paray shot Vidos in the chest while hiding in the weeds. Barnes testified at the hearing that he did not ask appellant any questions prior to her outburst. Nor did he make any promises to her. Under *Edwards, supra,* appellant's initiated communication constitutes a waiver and takes it out of the purview of the Fifth and Sixth Amendments. *Michigan, supra.* For these reasons, we affirm the circuit court's ruling to admit appellant's statement to Barnes. Because we affirm on the Fifth and Sixth Amendment issues, we affirm on the state constitutional grounds.

## II. Waiver of lawyer-client privilege

For her second point on appeal, appellant argues that the circuit court erred in permitting testimony obtained in violation of the lawyer-client privilege under Ark. R. Evid. 502(b). At issue is appellant's statement to Donna Phillips regarding the location of the victim's body, which was relayed by Phillips to the Boone County Sheriff's Department. Specifically, appellant contends that Phillips's testimony should not have been admissible because appellant did not waive the lawyer-client privilege, and she did not authorize Phillips to call law enforcement. The State responds, arguing that appellant waived any attorney-client privilege between Donna Phillips and appellant by consenting to the disclosure of the substance of their communications.

We have said that the trial courts have broad discretion and that a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Owens v. State,* 363 Ark. 413, 214 S.W.3d 849 (2005).

The general rule of attorney-client privilege is set forth in Rule 502(b) of the Arkansas Rules of Evidence:

> (b) *General Rule of Privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or

his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

*Id.*

Moreover, it is the client who may claim the privilege. Ark. R. Evid. 502(c). Client is defined as "a person, . . . who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him." Ark. R. Evid. 502(a)(1). Confidential communication is defined by the rule as follows: "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Ark. R. Evid. 502(a)(5).

The privilege attached to a confidential communication under Rule 502 is held by the client, and that privilege may be waived. *Holt v. McCastlain*, 357 Ark. 455, 182 S.W.3d 112 (2004). Inherent in the idea of waiver of privilege is the understanding that the client is allowing disclosure of something that was previously privileged as a confidential communication. *Id.* at 463, 182 S.W.3d at 117.

In the present case, Phillips testified that appellant, Leslie Paray, Jonny Cris Acuff, Sharon Acuff, Scott Acuff, and appellant's cousin, Danny Johnson, came to her office in Fayetteville. She testified that appellant's family discussed an issue regarding a body located on their property. She conveyed to them that she was not a criminal-law attorney, and, believing that they were not involved in the murder, she advised that they call the sheriff. Phillips left the room, and when she returned, she obtained their consent and placed the call to the sheriff on speaker phone. Phillips further testified that at no time was she alone with appellant. Thus, we conclude that Phillips's testimony illustrates appellant's waiver of the attorney-client privilege and appellant's consent to call the police.

Further, we note that the credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and we

defer to the superior position of the trial judge in matters of credibility. *See Otis v. State*, 364 Ark. 151, 217 S.W.3d 839 (2005). Here, the circuit court gave weight to Phillips's statement that appellant consented to Phillips's disclosure to law-enforcement officers. Because the circuit court was in the superior position to determine Phillips's credibility, we hold that the court did not err in its ruling.

### III. Character evidence of the victim

For her third point on appeal, appellant argues that the circuit court erred in denying appellant the right to elicit evidence tending to corroborate testimony about the conduct of Lloyd Vidos. Specifically, appellant contends that Sharon Acuff's testimony concerning an allegation that the victim had molested one of his children should have been admitted into evidence.

The State argues that the circuit court did not abuse its discretion by excluding proffered testimony about the victim's character. The State asserts that the circuit court was correct in ruling that Sharon Acuff's testimony was too speculative, confusing, misleading, and irrelevant.

Appellant presents her argument in the context of Rule 403 of the Arkansas Rules of Evidence. Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Id.* We have noted that the operative word in Rule 403 is "unfair." *Diemer v. State*, 365 Ark. 61, 225 S.W.3d 348 (2006). The fact that the evidence is harmful, or prejudicial, to one side or the other does not cause it to be inadmissible. *Id.*

In the present case, appellant sought to include the following testimony by Sharon Acuff. The following colloquy occurred:

> Q: Okay. Did you — did — what behavior did you observe — and this in 2002, that you personally observed of your granddaughter, K., when she saw her father, Lloyd Vidos?
>
> A: When we would meet at Junction City she would — she would be okay if she seen Debra and Metz get out the

car. The minute she seen Lloyd coming out she would start crying and just screaming. And Lloyd — Debra would have him get back in the car, go buy her some candy, and try to smooth it over. They would leave with her crying.

Q: Now, did — did — did you ever hear Lloyd say anything about — about K.? You personally hear Lloyd say anything about K.?

A: No.

Q: Okay. Did you suspect that something was amiss involving — involving K. and Lloyd?

A: Yes, I did.

Q: Did you call any — did you call — now, this is before Lloyd's death. Did you call any social service agency or — or law enforcement agency?

A: No.

We agree with the circuit court's ruling to exclude Sharon Acuff's testimony. Her testimony pointed to her grand-daughter crying when taken from her grandparents to visit her father, rather than any specific proof of any allegations of child molestation. More importantly, she admitted that she never called any social-service agency or any law-enforcement authorities to report any incidents of child abuse. Without any further proof of child molestation, we hold that the circuit court was correct in its ruling that Sharon Acuff's testimony was too speculative.

We further note that appellant makes arguments regarding compulsory process, confrontation clause, and due process under the Fifth, Sixth, and Fourteenth Amendments, as well as Article 2, §§ 8 and 10 of the Arkansas Constitution. However, appellant fails to present any analysis under these rules, and without any further development, we decline to address the merits of these arguments. For these reasons, we affirm the circuit court's ruling to exclude Sharon Acuff's testimony.

### IV. Jury instruction

For her fourth argument, appellant argues that the circuit court erred in refusing an instruction concerning different criminal liabilities of co-defendants. Specifically, appellant contends that

the circuit court incorrectly based its decision upon *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999). Appellant asserts that the proffered instruction based on Ark. Code Ann. § 5-2-406 (Repl. 1997), is applicable and that the *Jones* case should be overruled.

The State argues that the circuit court did not err in rejecting appellant's proffered instruction on accomplice liability. The State asserts that any error from the rejection of the proffered man-slaughter and negligent-homicide instructions was cured by the jury's verdict.

With regard to our standard of review, we have stated that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003). We will not reverse a trial court's decision to give an instruction unless the court abused its discretion. *Id.*

Appellant proffered the following instruction based upon Ark. Code Ann. § 5-2-406:

> When two (2) or more persons are criminally liable for an offense of which there are different degrees, each person shall be liable only for the degree of the offense that is consistent with his own mental culpability or with his own accountability for an aggravating fact or circumstance.

The circuit court rejected appellant's proffered instruction on the basis of our holding in *Jones, supra,* where we considered the instruction based upon section 5-2-406. In *Jones,* the defendant proffered the statute as a non-model jury instruction to be substituted in place of a model jury instruction. The trial court refused to give the requested non-model jury instruction, and, in affirming the circuit court, we stated:

> This court has previously held that although the proffered instruction is a correct statement of the law, it is not a model jury instruction and, further, that it is unnecessary to give it when its substance is covered by other instructions. *See Ventress v. State,* 303 Ark. 194, 794 S.W.2d 619 (1990) (citing *Wallace v. State,* 270 Ark. 17, 603 S.W.2d 399 (1980)); *Henderson v. State,* 284 Ark. 493, 684 S.W.2d 231 (1985).

*Jones,* 336 Ark. at 205, 984 S.W.2d at 439. We expanded the *Jones* case in *Wilson v. State,* 364 Ark. 550, 222 S.W.3d 171 (2006), where we

stated, "Thus, we have limited Ark. Code Ann. § 5-2-406's application to instances where two or more defendants are being tried together or where the criminal liability of the other codefendants has previously been decided." *Id.*

We reject appellant's argument to overrule *Jones*. We decline to overrule this precedent because we adhere to our well established skip rule, which provides that when a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Yankaway v. State*, 366 Ark. 18, 233 S.W.3d 136 (2006). Appellant asserts that the circuit court erred in rejecting jury instructions on manslaughter and negligent homicide and instructing the jury on capital murder and the lesser-included offenses of first-degree and second-degree murder. We disagree with appellant's argument. Here, the jury found appellant guilty of capital murder, the greater offense. The skip rule is applicable and, as such, any error that might have resulted from the trial court's failure to instruct the jury was cured. Thus, the skip rule bars appellant's argument that the circuit court abused its discretion in failing to give a manslaughter or a negligent-homicide instruction. Further, we note that we have relied upon our *Jones* holding in subsequent cases. *See Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001) (holding that the circuit court was correct in refusing to give the non-model instruction based upon section 5-2-406); *Wilson, supra.* For these reasons, we affirm the circuit court's ruling on this point.

## V. Testimony of the victim's mother

For her fifth argument on appeal, appellant argues that the circuit court erred in making three evidentiary rulings regarding testimony of Debra Vidos, the victim's mother. That testimony includes Debra Vidos's statements concerning (1) her son's reaction to appellant's affair with Paray; (2) conversations between appellant and her son concerning child custody and marriage; and (3) an alleged job offer made to her son.

The State argues that the circuit court did not abuse its discretion in its evidentiary rulings. Specifically, the State contends that the first point is unreviewable, and that the second and third evidentiary rulings did not contain any hearsay statements.

The State sought to admit this evidence under the catchall exception to the hearsay rule by filing an amended notice of intent

to use hearsay. Rule 804(a)(5) provides a residual exception to the hearsay rule when the declarant is unavailable. A witness is "unavailable" only if she is absent from the hearing and the proponent of her statement has been unable to procure . . . her attendance or testimony . . . by process or other reasonable means. Ark. R. Evid. 804(a)(5).

The circuit court was correct in its ruling for the following reasons. First, Debra Vidos testified that she saw appellant "in the company of Leslie Paray many times, on more than one occasion." When the prosecutor asked how her son reacted, defense counsel objected. The circuit court conducted a bench conference with the State and defense counsel; however, the court did not make a ruling on Vidos's statements concerning appellant's company with Leslie Paray. Because appellant failed to obtain a ruling on this argument, we decline to address it. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

■ Next, the circuit court overruled defense counsel's objections to Debra Vidos's testimony concerning a phone conversation between appellant and the victim after their court date concerning custody of the children, their marriage, and a job offer. Here, Vidos did not testify as to what the victim said, but rather she testified as to her perceptions of whether appellant and her son would remarry. Finally, the circuit court overruled an objection pertaining to Debra Vidos's knowledge of a job offer extended to her son. In this instance, Vidos's testimony was admissible because she testified as to her son's preparations in moving to Texas and Alaska. Thus, we conclude that Debra Vidos's testimony was not hearsay. The circuit court was correct in its rulings because the statements were not offered for the truth of the matter asserted, but to explain the testifying officer's subsequent actions in the investigation. *See Skiver v. State*, 336 Ark. 86, 983 S.W.2d 931 (1999). For these reasons, we affirm the circuit court's rulings on this point.

Further, we should note that appellant raises a confrontation-clause objection. However, the admission of non-hearsay raises no confrontation-clause concerns. *See United States v. Inadi*, 475 U.S. 387, 398 (1986).

## VI. Suppression of physical evidence

For her sixth point on appeal, appellant argues that the circuit court erred in refusing to suppress physical evidence ob-

tained as a result of searches and seizures. Specifically, appellant divides her argument into the evidence seized at the properties at Shake Rag Hollow, Daniels Road, and Sweeney Lane. The State contends that the circuit court was correct in determining that this physical evidence was admissible.

It is well settled that capacity to claim the protection of the Fourth Amendment depends upon whether a person who claims the protection has a legitimate expectation of privacy in the invaded place. *Katz v. United States,* 389 U.S. 347 (1967). We must decide whether appellant has standing to challenge the search of the Acuffs' property. Fourth Amendment rights against unreasonable searches and seizures are personal in nature. *Rakas v. Illinois,* 439 U.S. 128 (1978). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Id.* A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property. *Id.* One is not entitled to automatic standing simply because he is present in the area or on the premises searched or because an element of the offense with which he is charged is possession of the thing discovered in the search. *Id.* Any pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id.*

First, we address the evidence seized on the Acuff property at Shake Rag Hollow Road. Here, appellant lacks standing to challenge the admissibility of this evidence. She was not an owner of the property, and at the suppression hearing, she did not meet the burden of showing a legitimate expectation of privacy in the property. In fact, the house on the property was abandoned and appeared to be used for storage. Additionally, the land was on an open road in which there is no legitimate expectation of privacy. *See, e.g., Oliver v. United States,* 466 U.S. 170, 180 (1984); *see also* Ark. R. Crim. P. 14.2.

Second, we consider the evidence seized at the Daniels Road property. Appellant raises a challenge to the admissibility of the blood on the tractor. The Daniels Road residence is appellant's parents' house, and she possesses a key. According to Deputy Tim Roberson, the tractor was parked in front of a gate beside a barn, which was located behind the Acuffs' house.

The Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable. *Oliver,* 466 U.S. at 177. If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so. *See Burdyshaw v. State,* 69 Ark. App. 243, 10 S.W.3d 918 (2000). Generally, one does not have a reasonable expectation of privacy in the yard, driveway, sidewalks, and other open areas of what we consider curtilage. *See Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003).

Here, the police officer did not violate appellant's Fourth Amendment right to be free from unreasonable searches and seizures by merely walking from the house to the barn. After the officer knocked at the residence and discovered that no one was home, he walked around the house to see if Acuff was in the backyard. There, he saw the tractor with a front-end loader parked at the gate. He saw blood, the Velcro patch, and thistles in the radiator. The officer made these observations from a lawful vantage point. For these reasons, we hold that the circuit court did not err in refusing to suppress this evidence.

Third, appellant challenges the search and seizure at Sweeney Lane, appellant's residence. There, officers seized a knife, a camouflage nylon bag containing assorted clothes, two receipts, a woman's watch, and two pairs of latex gloves. Appellant takes issue with the search warrant. Specifically, appellant contends that the warrant "does not specify the city or county in which the warrant is to be served, does not contain the identity of the issuing officer or the place where application was made, does not contain any restriction as to a reasonable time when the warrant shall be executed, is not specific as to what may be searched, and what may be seized."

The State responds that highly technical attacks, such as appellant's, are not favored because the success of such attacks could discourage law-enforcement officers from utilizing search warrants. *See Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003). While a warrant must include a finding that there was probable cause for the search, that requirement does not mean that the warrant must recite, in detail, each of the specific facts on which the judicial officer bases his finding that probable cause exists. *Baxter v. State,* 262 Ark. 303, 556 S.W.2d 428 (1977).

■ Here, any alleged insufficiencies of the search warrant can be cured by the attached affidavit for search warrant filed by Investigator Jack Hutson and Captain Mark Rupp of the Boone County Sheriff's Office, as well as Sergeant David Lafferty of the Arkansas State Police. In the affidavit, the officers stated exactly what residence was searched and where it was located. Further, they noted that they did not know the whereabouts of appellant, Sharon Acuff, and Leslie Paray. They indicated that the facts established reasonable cause to believe that the objects to be seized were in danger of imminent removal. They also signed the statement, verifying the veracity of their sworn statement. Thus, through the affidavit, the officers provided in ample detail what the search warrant allegedly was lacking.

Appellant also argues that the same search warrant supporting the search of a red 1983 pickup truck, driven by the victim, was insufficient. Specifically, appellant makes numerous technical attacks, including that there was insufficient probable cause and that the warrant was unspecific. We have stated that the warrant, which was supported by an affidavit filed by Investigator Hutson, Captain Rupp, and Sergeant Lafferty, was sufficient. For these reasons, we affirm the circuit court's ruling on this point.

The record in this case has been reviewed pursuant to Supreme Court Rule 4-3(h) for reversible error, and none has been found. *Dickinson v. State*, 367 Ark. 102, 238 S.W.3d 125 (2006).

Affirmed.

IMBER, J., not participating.