2011 Ark. 429

**Brian N. NELSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

No. CR 11–336.

Supreme Court of Arkansas.

Oct. 13, 2011.

Gregory Karl Crain, Malvern, for appellant.

Dustin McDaniel, Att'y Gen., by: Rebecca Kane, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, Brian N. Nelson, appeals the judgment of the Grant County Circuit Court convicting him of four counts of sexual assault of a minor and sentencing him consecutively to 672 months' imprisonment in the Arkansas Department of Correction. For reversal, Appellant challenges the sufficiency of the evidence and the constitutionality of the Arkansas Rape Shield Statute, Ark.Code Ann. § 16–42–101 (Repl.1999); he also contends that his custodial statement should have been excluded and that evidence regarding the victim's character for truthfulness should have been admitted. As the constitutionality of the rape-shield statute is challenged, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1) and (a)(8) (2011). We affirm.

Appellant was charged with various counts and degrees of sexual assault against a minor. The victim, C.F., was a boy who was fourteen years old at the time of the assaults in 2008. C.F. testified at trial that on three separate occasions Appellant and he engaged in various forms of sexual conduct including masturbation, oral sex, and anal sex. Appellant also testified at trial, giving a slightly different version of events, but admitting to three occasions in which he and C.F. engaged in masturbation, oral sex, and anal sex. Both C.F. and Appellant testified that the two were neighbors, that Appellant hired C.F. to mow his yard, and that C.F. had spent the night in Appellant's home at the invitation of Appellant's then ten-year-old son. A Grant County jury convicted Appellant on four counts of sexual assault. Appellant presents four arguments for reversal of the judgment entered pursuant to the jury's verdict.

Appellant's first point for reversal is a very narrow and specific challenge to the sufficiency of the evidence. At the close of the State's case, Appellant moved for a directed verdict arguing specifically that the State had failed to prove that Appellant was in a position of trust or authority over C.F. or served as C.F.'s temporary caretaker. The circuit court denied the motion, recalling that there had been testimony that Appellant agreed and C.F.'s parents agreed that C.F. could spend the night at Appellant's home. The circuit court reasoned that the jury could use its collective wisdom to consider that testimony and determine if Appellant then became the temporary caretaker of C.F. At the close of all the evidence, Appellant renewed his motion for directed verdict as to the issue of Appellant being a temporary caretaker or person in position of trust and authority over C.F. The circuit court denied the renewed motion.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Vance v. State,* 2011 Ark. 392, 384 S.W.3d 515. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

As relevant to this argument on appeal, Appellant was convicted of sexual assault in the first degree, a violation of Ark.Code Ann. § 5–14–124(a)(3) (Repl.2006), and of sexual assault in the second degree, a violation of Ark.Code Ann. § 5–14–125(a)(4)(A)(iii) (Repl.2006).[1] Under both statutes, the State had the burden of proving that at the time of the assault, Appellant was a "temporary caretaker" of the victim, or a "person in a position of trust or authority" over the victim. On appeal, Appellant contends that the evidence of these two statutory terms is insufficient because, although there was testimony that Appellant's then ten-year-old son had invited C.F. to spend the night at Appellant's home, nothing was offered to show that C.F.'s parents prearranged the circumstances of C.F.'s care while he stayed the night in Appellant's home.

This court observed in *Bowker v. State,* 363 Ark. 345, 214 S.W.3d 243 (2005), that the General Assembly had not defined these two statutory terms and that no Arkansas cases had defined these terms, thus the rules of statutory interpretation should be used in determining their meaning. This court went on to say as follows:

Until the legislature defines the term, we must look to the plain meaning of the term, "temporary caretaker." "Temporary" is defined as "lasting for a time only; existing or continuing for a limited (usually short) time; transitory." *Black's Law Dictionary* 1504 (8th ed.1999). "Caretaker," which is also defined as "caregiver," means "a person, usually not a parent, who has and exercises custodial responsibility for a child or for an elderly or disabled person." *Black's Law Dictionary* 225 (8th ed.1999).

Further, on the issue of temporary caretaker, we are guided by the court of appeals' reasoning in *Murphy v. State,* 83 Ark.App. 72, 117 S.W.3d 627 (2003). Murphy and Ray were convicted of first-degree sexual assault of a sixteen-year-old boy. On appeal, Murphy and Ray challenged the sufficiency of the evidence to support their convictions, which required the State to prove their status as temporary caretakers or persons in a position of trust or authority of the victim. The court of appeals cited with approval *People v. Secor* [279 Ill.App.3d 389, 216 Ill.Dec. 126], 664 N.E.2d 1054 (Ill.App.1996), for the definition of a person in a position of trust or authority in relation to the victim, and stated:

In *Secor,* the court affirmed a conviction of sexual assault against a fourteen-year-old victim who was spending the night with the appellant's son in their home. The appellant was not a stranger to the victim, but rather a friend and neighbor of the victim's family. The court deter-

---

1. The State correctly points out that Appellant was also convicted of sexual assault in the fourth degree, a crime that does not require the State to prove that Appellant was a "temporary caretaker" of C.F. or in a "position of trust or authority" over C.F. *See* Ark.Code Ann. § 5–14–127 (Repl.2006). Appellant's argument on appeal, however, challenges the proof only as it relates to these two statutory terms.

mined that although the appellant and victim were not related, their relationship raised a strong inference of trust and supervision; and further, that the appellant's function in that relationship could be characterized, at a minimum, as that of a babysitter or chaperone. This situation is analogous to the instant case. Under the facts of this particular case [*Murphy*], we find that there was sufficient evidence from which the jury could have determined that the appellants were in a position of trust or authority in relation to the victim.

*Id.* at 353–54, 214 S.W.3d at 248 (quoting *Murphy v. State,* 83 Ark.App. 72, 80, 117 S.W.3d 627, 632 (2003)).

In the present case, the testimony was undisputed that Appellant hired C.F. to mow his yard on numerous occasions. It was also undisputed that C.F. spent the night in Appellant's home at the invitation of Appellant's son. C.F.'s father testified that on two occasions, he and C.F.'s mother agreed that C.F. could stay the night. C.F.'s father explained that he knew that C.F. had been working for Appellant mowing his yard and that he thought Appellant would take care of C.F. C.F.'s father acknowledged that he never gave any instructions to Appellant on how to care for C.F. other than a request that Appellant refrain from drinking alcohol around C.F. C.F.'s father testified that he trusted Appellant to take care of C.F. Applying *Bowker* and the cases discussed therein to the present case, we conclude that the foregoing constitutes substantial evidence that Appellant was a temporary caretaker of C.F. or a person in a position of trust or authority over C.F.

As we did in *Bowker,* we conclude that Appellant fulfilled the role of "temporary caretaker" or "person in a position of trust or authority," as Appellant was in a position to care for C.F. while C.F. was staying overnight in Appellant's home. Although there was no proof offered as to the specific details of care C.F.'s parents expected Appellant to provide, there was testimony that C.F.'s father trusted Appellant to care for his son. There is additional evidence in this case from which the jury could have concluded that Appellant stood in a position of trust and authority over C.F. as one who hired C.F. to mow his yard. Accordingly, there is substantial evidence to support the jury's verdict for first- and second-degree sexual assault, and the circuit court did not err in denying Appellant's motion for directed verdict based on insufficient proof of the element of "temporary caretaker" or "person in a position of trust or authority" over the victim.

■ Appellant's second point for reversal is a constitutional challenge to the Arkansas Rape Shield Statute, Ark.Code Ann. § 16–42–101 (Repl.1999). Appellant filed a motion with the circuit court and argued below, as he does in his brief on appeal, that according to the recent decision in *Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, 308 S.W.3d 135, the statute is unconstitutional per se in violation of the separation-of-powers clause in the Arkansas Constitution, article 4, section 2, and in violation of the grant of authority to this court to establish rules of pleading, practice, and procedure in amendment 80, section 3.

As he was required to do, Appellant notified the Attorney General's office of his challenge to the statute, and the Attorney General's office chose not to appear at the hearing on Appellant's motion. The circuit court ruled from the bench at the hearing and denied Appellant's motion, reasoning that, unlike the two portions of the Civil Justice Reform Act of 2003 at issue in *Johnson,* which specifically mandated that

certain evidence be considered and that certain evidence be excluded, the rape-shield statute allows the judge to make the ultimate decision of whether the challenged evidence is relevant and admissible. Despite Appellant's argument to the contrary, we find no error in the circuit court's decision.

This court has twice addressed the rape-shield statute in the context of the separation-of-powers doctrine in our state's constitution and concluded that it "did not view the rape shield statute as having supplanted this court's rule-making power and ability to control the courts." *M.M. v. State*, 350 Ark. 328, 330, 88 S.W.3d 406, 408 (2002) (citing *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000)). Appellant now argues that after *Johnson*, a statute that limits what evidence can be admitted violates the separation-of-powers doctrine. Appellant relies heavily on this court's statement that "so long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional. This is because rules regarding pleading, practice, and procedure are solely the responsibility of this court. *See* Ark. Const. amend. 80, § 3." *Johnson*, 2009 Ark. 241, at 8, 308 S.W.3d at 141. Appellant relies further on this court's language that "[i]t is undisputed ⎣₇that the rules of evidence are 'rules of pleading, practice and procedure.' Moreover, we have held that the rules of evidence are rules falling within this court's domain." *Id.* at 10, 308 S.W.3d at 142.

The purpose of the rape-shield statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). Ac-

cordingly, the statute provides that evidence of a victim's prior sexual conduct is inadmissible at trial *except* where the court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Id.* Thus, this court has previously observed that "[t]he [rape-shield] statute does not totally bar evidence of a victim's sexual conduct but instead makes its admissibility discretionary with the trial judge." *Harris v. State*, 322 Ark. 167, 174, 907 S.W.2d 729, 733 (1995). Moreover, we have described the discretion vested with the circuit court as being "a great deal of discretion" in ruling whether the challenged rape-shield evidence is relevant and admissible. *Rounsaville v. State*, 372 Ark. 252, 258, 273 S.W.3d 486, 491 (2008).

This lack of a total bar on admissibility is a critical feature of the rape-shield statute that is overlooked in Appellant's argument and that distinguishes that statute from the two portions of the Civil Justice Reform Act at issue in *Johnson*. This feature of the rape-shield statute vesting wide discretion in the circuit court is the means by which the statute survives Appellant's separation-of-powers challenge.

⎣₈In summary, as our foregoing discussion demonstrates, the rape-shield statute, which was enacted prior to amendment 80, achieves its purpose without supplanting this court's rulemaking power and ability to control the admissibility of evidence in the courts. Amendment 80 and *Johnson* did nothing to change that. We therefore find no error in the circuit court's decision to uphold the constitutionality of the rape-shield statute under a separation-of-powers challenge.

■ As his third point for reversal, Appellant asserts that the circuit court erred in admitting into evidence the statement

he gave to police while in custody. He argues on appeal, as he did below, that he did not make a knowing, voluntary, and intelligent waiver of his *Miranda* rights prior to giving the statement because he was under the influence of alcohol and the drug Xanax at the time he gave the statement in which he admitted involvement with C.F. The State responds that, because Appellant's argument on appeal is not supported by any citation to authority, we need not address it.

■ This court does not consider an argument, even a constitutional one, if the appellant makes no convincing argument or cites no authority to support it, and it is not apparent without further research that the appellant's argument is well taken. *Talbert v. State,* 367 Ark. 262, 239 S.W.3d 504 (2006). In his brief, Appellant makes only a conclusory allegation that his waiver was involuntary due to the influence of drugs and alcohol. As the State correctly points out, this conclusory allegation is not supported by citation to authority of any kind. Given our precedent that intoxication goes to the weight or credibility to be given a statement rather than to the admissibility of the statement, it is not apparent to us that this ╷₉argument is well taken. *Standridge v. State,* 329 Ark. 473, 951 S.W.2d 299 (1997); *Phillips v. State,* 321 Ark. 160, 900 S.W.2d 526 (1995); *Midgett v. State,* 316 Ark. 553, 873 S.W.2d 165 (1994). Accordingly, we do not address this argument due to the lack of citation to authority and convincing argument.

■ As his fourth and final point for reversal, Appellant contends that the circuit court erred in excluding the testimony of Cari Harp, Appellant's neighbor and friend, on the subject of Appellant's character for truthfulness. Appellant's trial counsel asked Ms. Harp to "describe to the jury that C.F. is a truthful or untruthful person"? The State objected, and the circuit court sustained the objection. Appellant argued below, as he does in his brief on appeal, that Ms. Harp's testimony should have been allowed under Rule 404(a)(2) of the Arkansas Rules of Evidence concerning the character of a victim.

We cannot address the merits of Appellant's final argument, however, because Appellant did not make a proffer of Ms. Harp's excluded testimony, and the substance of what her testimony might have been is not apparent from the context within which the broad and open-ended question was asked.[2] *See Thomas v. State,* 349 Ark. 447, 79 S.W.3d 347 (2002). Our rules of evidence require that when challenging the exclusion of evidence, a substantial right of the party must be affected and the party must make a proffer of the excluded evidence ╷₁₀at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. *Id.;* Ark. R. Evid. 103(a)(2) (2011). Appellant's failure to proffer Ms. Harp's testimony precludes our review of this point.

For the aforementioned reasons, the judgment of convictions is affirmed.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring.

While I concur that this case should be affirmed, I do not believe that the constitu-

---

2. We note that there was a pretrial bench conference in which the State successfully moved in limine to exclude a portion of Ms. Harp's testimony. Although counsel's comments from that conference indicate that Ms. Harp would testify that C.F. made sexual advances toward her and her daughter, no formal proffer was made at that time either. We are therefore simply unable to determine if these two attempted lines of questioning overlapped or were related in any way.

tional challenge to the rape-shield statute, Arkansas Code Annotated section 5–14–101 (Repl.2006), should be addressed on appeal because it is not relevant. If Nelson were to prevail in having the rape-shield statute declared unconstitutional, he would obtain the right to a new trial in which the evidence of the victim's prior sexual conduct he wishes to introduce would be excluded as irrelevant.

Nelson moved in writing before trial to have the rape-shield statute declared unconstitutional so that "he be allowed to offer any evidence of prior sexual conduct of C.F." The only purpose Nelson could have in seeking to reveal the child's past sexual conduct was an attempt to bolster his argument that his conduct should be in some measure excused because he believes that the child was at least responsible in part for his actions. The child's asserted consent and alleged intent are not relevant.

Nelson was convicted of sexual assault in the first degree under Arkansas Code Annotated section 5–14–124 (Repl.2006). "It is no defense to a prosecution under this section that the victim consented to the conduct." Ark.Code Ann. § 5–14–124(b) (Repl.2006). The victim's intent and willingness simply are not relevant. Criminal liability attaches when a person "engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age." Ark. Code Ann. § 5–14–124(a) (Repl.2006). In sum, nothing that occurred in the motion and hearing on the constitutionality of the rape-shield statute casts light on the issues relevant to this appeal, and the issue should not be addressed.

Nonetheless, this court should take this opportunity to refer the rape-shield statute to the Arkansas Supreme Court Committee on Criminal Practice for possible adoption as a rule of evidence. Section 3 of amendment 80 provides that this court "shall prescribe rules of pleading, practice, and procedure." The rape-shield statute directly defines the "[a]dmissibility of evidence of a victim's prior sexual conduct." Ark.Code Ann. § 16–42–101. It sets out a precise procedure, including hearings, and how evidence must be admitted at trial. It is a rule of procedure that only this court shall prescribe. *See* Ark. Const., amend. 80, § 3.