

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-16-981

| | |
|---|---|
| JEREMY CHARLES ROWLAND<br>APPELLANT | **Opinion Delivered:** August 30, 2017 |
| V. | APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23CR-15-405] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CHARLES E.<br>CLAWSON, JR., JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's June 14, 2016 sentencing order in which it found appellant guilty of sexual assault in the second degree and sentenced him to 204 months' imprisonment in the Arkansas Department of Correction. Appellant's sole point on appeal is that the circuit court erred by giving a jury instruction other than that found in the Arkansas Model Criminal Instructions (AMC instructions). We affirm.

Appellant was charged by felony information filed on May 27, 2015, with sexual assault in the second degree, a Class "B" felony.[1] Appellee filed a combined motion and brief requesting a non-AMC instruction on sexual assault in the second degree. It argued that the "law is clear" regarding the definitions of "sexual gratification" and "temporary

---

[1]An amended felony information was filed on June 15, 2016, changing the subsection pursuant to which appellant was charged from Arkansas Code Annotated section 5-14-125(a)(6) & (b)(1), to Arkansas Code Annotated section 5-14-125(a)(4)(iii).

caretaker[,]" but jury instruction AMI Crim. 2d 1403 fails to address either definition.[2] It asserted that both definitions were "important issues in the present case" because appellant (1) "may claim that any contact with the victim does not fall under sexual contact because it was not done for sexual gratification" and (2) "may claim that he was not a temporary caretaker, since this is one of the elements of Sexual Assault in the Second Degree." Appellee argued that it would be prejudiced "without a proper explanation of the law" regarding these two terms, which AMI Crim. 2d 1403 allegedly fails to do, and proffered its instruction. Appellant filed his objection to appellee's motion on June 27, 2016.

A hearing on appellee's motion was held on July 13, 2016, prior to the trial on the matter scheduled for that day. Appellee reiterated its argument from its brief, stating that whether appellant was sexually gratified by his actions and whether appellant was a temporary caretaker of the victim were "apparently going to be issues" as anticipated by appellee, then "the jury should be properly instructed as to the definitions[.]" Appellant's counterargument, in full, was that "the standard instructions are a hundred percent on point."

The circuit court ruled that whether appellant was a temporary caregiver was an element of the offense that appellee was required to prove and so, found that a definition of the term was "an appropriate thing." After being advised that "sexual gratification" was included in the definition of "sexual contact[,]" the latter of which is an element of the offense of sexual assault in the second degree, the circuit court found that it would not go

---

[2]AMI Crim. 2d 1403 is the model jury instruction on sexual assault in the second degree.

into the definition of sexual gratification "other than how it's—it is expressed in the definition of sexual contact for purposes of voir dire." It delayed its ruling on whether it would give a jury instruction on the definition of "sexual gratification."

After appellee rested its case, the circuit court stated that it had advised appellee that it would not give the instruction on sexual assault in the second degree "that involved an expanded—or a definition of the terms [sic] of sexual gratification" and that appellee had prepared a substitute jury instruction which left out the definition of sexual gratification.[3] As permitted by the court, the jury instruction included a definition of "temporary caretaker." This instruction, given by the circuit court, was as follows:

> Jeremy Rowland is charged with the offense of sexual assault in the second degree. To sustain this charge, the State must prove the following things beyond a reasonable doubt:

> First, that Jeremy Rowland engaged in sexual contact [with K.C.] and, second, that [K.C.] was less than 18 years of age at the time of the alleged offense and, third, that Jeremy Rowland was at the time of the alleged offense a temporary caretaker of [K.C.] or a person in position of trust or authority over [K.C.]

> It is no defense to the charge of sexual assault in the second degree that [K.C.] consented to the conduct.

> And these definitions are applicable: Sexual contact means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs or buttocks or anus of a person or the breast of a female.

> Temporary caretaker means a caretaker, usually not a parent, who has and exercises custodial responsibility for a child for a limited, usually a short period of time, a babysitter, or chaperone.

> Voluntarily [sic] intoxication is not a defense to any criminal offense in Arkansas.

---

[3]Appellant also moved for a directed verdict, alleging that appellee failed to prove his age and failed to prove he was a temporary caretaker; the motion was denied.

This timely appeal followed.

A circuit court's decision whether to give an instruction will not be reversed unless the court abused its discretion.[4] A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction.[5] We will not reverse a trial court's decision to give or reject an instruction unless the court abused its discretion.[6] A non-AMC instruction should be given only when the circuit court finds that the AMC instruction does not correctly state the law or that the AMC instruction does not contain a needed instruction on the subject.[7]

For purposes of this matter, a person commits sexual assault in the second degree if the person engages in sexual contact with a minor and the actor is a temporary caretaker or a person in a position of trust or authority over the minor.[8] Appellee argued that appellant was a temporary caretaker of the victim. The phrase "temporary caretaker" is not defined by statute. In *Nelson v. State*, our supreme court stated the following regarding the definition of a "temporary caretaker":

> Until the legislature defines the term, we must look to the plain meaning of the term, "temporary caretaker." "Temporary" is defined as "lasting for a time only; existing

---

[4]*Boose v. State*, 2017 Ark. App. 302, at 2, ___ S.W.3d ___, ___ (citing *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006)).

[5]*Akers v. State*, 2015 Ark. App. 352, at 8, 464 S.W.3d 483, 488 (citing *Vidos*, 367 Ark. at 300, 239 S.W.3d at 476).

[6]*Id.* (citing *Vidos*, 367 Ark. at 300, 239 S.W.3d at 476).

[7]*Id.* (citing *Ventress v. State*, 303 Ark. 194, 197, 794 S.W.2d 619, 620 (1990)).

[8]Ark. Code Ann. § 5-14-125(a)(4)(A)(iii) (Repl. 2013).

or continuing for a limited (usually short) time; transitory." "Caretaker," which is also defined as "caregiver," means "a person, usually not a parent, who has and exercises custodial responsibility for a child or for an elderly or disabled person."[9]

Being a babysitter or a chaperone is sufficient to establish a person as a temporary guardian or caretaker.[10] Because the term "temporary caretaker" is not defined by statute, the AMC instruction did not include a definition of the term, and the definition in the non-AMC instruction was a correct statement of law regarding the definition of the term, this court holds that the circuit court did not err in giving the non-AMC instruction defining "temporary caretaker."

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[9]*Nelson*, 2011 Ark. 429, at 3–4, 384 S.W.3d 534, 536 (citing *Black's Law Dictionary* 1504 (8th ed. 1999) & *Black's Law Dictionary* 225 (8th ed. 1999)).

[10]*Halliday v. State*, 2011 Ark. App. 544, at 6, 386 S.W.3d 51, 55 (citing *Cluck v. State*, 2009 Ark. App. 381) ("The relationship was at a minimum that of a babysitter or chaperone, which suffices to establish appellant as a temporary caretaker or a person in a position of trust or authority over the victim.").