Cite as 2020 Ark. App. 464

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-837

| | | |
|---|---|---|
| LONNIE ROSS, JR. | | **Opinion Delivered:** October 7, 2020 |
| | APPELLANT | APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT |
| V. | | [NO. 29CR-18-300] |
| STATE OF ARKANSAS | | HONORABLE DUNCAN CULPEPPER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED; MOTION GRANTED |

**MEREDITH B. SWITZER, Judge**

Lonnie Dale Ross, Jr., was tried by a jury and found guilty of two counts of sexual assault in the second degree. He was sentenced to forty years on each count, with the sentences to run consecutively. Ross's appellate counsel has filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Ark. Sup. Ct. R. 4-3(k) (2019), along with a motion to withdraw as counsel, asserting that there are no issues of arguable merit for an appeal. Ross was notified by certified mail of his right to file pro se points for reversal. He has filed no points, and therefore the State filed no brief. We affirm Ross's convictions and grant the motion to withdraw.

In a no-merit appeal, counsel is required to list each ruling that is adverse to the defendant and to explain why each adverse ruling does not present a meritorious ground for reversal. *Anders*, *supra*; Ark. Sup. Ct. R. 4-3(k)(1). The test is not whether counsel thinks the circuit court committed no reversible error but whether the points to be raised on appeal

would be wholly frivolous. *Livsey v. State*, 2020 Ark. App. 332, 602 S.W.3d 770. Pursuant to *Anders*, *supra*, we are required to fully examine all the proceedings to determine whether the case is wholly frivolous.

Counsel has identified nine adverse rulings and explained why each would not provide a meritorious argument on appeal. Two of the nine rulings identified by counsel are not actually adverse rulings and therefore need not be addressed. In an abundance of caution, counsel addressed the qualifications of the lead forensic interviewer to testify as an expert in the fields of forensic interviews and the dynamics of the disclosure of child sexual abuse and also addressed the State's introduction of Ross's prior convictions during the sentencing phase of the trial. There were no defense objections to these two items of evidence and no adverse rulings. It is therefore not necessary to address them.

The remaining seven adverse rulings consist of the following:

At the close of the State's case, Ross moved for a directed verdict, arguing that there was not substantial evidence to support a guilty verdict in the case and "also, specifically, that the State has failed to prove that Mr. Ross was the minor's temporary caretaker as required by the statute." He renewed the motion at the close of all the evidence. Both motions were denied.

Arkansas Code Annotated section 5-14-125 (Supp. 2019), defining sexual assault in the second degree, states in pertinent part:

(a) A person commits sexual assault in the second degree if the person:

   (4)(A) Engages in sexual contact with a minor and the actor is:

   . . . .

(iv) The minor's guardian, an employee in the minor's school or school district, *a temporary caretaker*, or a person in a position of trust or authority over the minor.

(B) For purposes of subdivision (a)(4)(A) of this section, consent of the minor is not a defense to a prosecution[.]

(Emphasis added.) "Sexual contact" is defined as:

(54)(A) "Sexual contact" means any act of sexual gratification involving:

(i) Touching, directly or through clothing, of the sex organs, buttocks, or anus of a juvenile or the breast of a female juvenile;

(ii) Encouraging the juvenile to touch the offender in a sexual manner; or

(iii) Requesting the offender to touch the juvenile in a sexual manner.

Ark. Code Ann. § 9-27-303 (Supp. 2019). In *Rowland v. State*, 2017 Ark. App. 415, at 4–5, 528 S.W.3d 283, 285–86 (quoting *Nelson v. State*, 2011 Ark. 429, at 3–4, 384 S.W.3d 534, 536), our court explained:

For purposes of this matter, a person commits sexual assault in the second degree if the person engages in sexual contact with a minor and the actor is a temporary caretaker or a person in a position of trust or authority over the minor. Appellee argued that appellant was a temporary caretaker of the victim. The phrase "temporary caretaker" is not defined by statute. In *Nelson v. State*, our supreme court stated the following regarding the definition of a "temporary caretaker":

Until the legislature defines the term, we must look to the plain meaning of the term, "temporary caretaker." "Temporary" is defined as "lasting for a time only; existing or continuing for a limited (usually short) time; transitory." "Caretaker," which is also defined as "caregiver," means "a person, usually not a parent, who has and exercises custodial responsibility for a child or for an elderly or disabled person."

Being a babysitter or a chaperone is sufficient to establish a person as a temporary guardian or caretaker. Because the term "temporary caretaker" is not defined by statute, the AMC instruction did not include a definition of the term, and the definition in the non-AMC instruction was a correct statement of law regarding the definition of the term, this court holds that the circuit court did not err in giving the non-AMC instruction defining "temporary caretaker."

3

(Internal citations omitted.)

S.W., the victim, testified that she was under the age of eighteen; that on one occasion, Ross touched her stomach with his fingers; that he moved his hand down into her jeans between her legs to her vagina but outside her panties; and that she could feel his fingers moving around between her legs on her vagina. She testified that on another occasion, Ross came into the bedroom where she and his daughter were; that he walked up to the bed and started touching her "butt" through her sleeping pants; and that while he was rubbing her "butt," he offered her money if she would let him "touch something." There was also testimony that Ross picked up and dropped off the girls at their mother's house on the weekends they visited him, he cooked for them, he would give them money for food, he set curfews for them, and he scolded them when they were late. Substantial evidence supported the convictions for two counts of sexual assault in the second degree, including Ross's status as a temporary caretaker, and any argument based on the circuit court's denials of the directed-verdict motions would be wholly without merit.

The circuit court overruled two defense hearsay objections. Neither one would provide a meritorious basis for reversal. The first hearsay objection arose when the State asked S.W. if Ross ever told her "to tell people or not to tell people anything." The State responded by noting that the statements of a party opponent are not classified as hearsay pursuant to Arkansas Rule of Evidence 801(d)(2). The second hearsay objection also arose during S.W.'s testimony. She testified that she first disclosed Ross's sexual abuse to her twin sister and her cousin, and the State then asked about their reaction. S.W. responded that they felt sorry for her and wanted her to tell. Ross objected on the basis of hearsay. The

4

State argued that the testimony was not offered for the truth of the matter asserted but rather "to carry the story along," to explain why the next step was taken; therefore, the testimony was not hearsay under Rule 801(c). We agree that any arguments based on the circuit court's denials of these hearsay objections would be wholly without merit.

A fifth adverse ruling arose during Kristi Kirkwood's testimony. Ms. Kirkwood was an investigator with the Crimes Against Children Division of the state police, and the State asked her how she became involved in Ross's case. Ross objected. During colloquy at the bench, the prosecutor explained that Kirkwood would testify only that someone told her S.W. had been abused, i.e., not mentioning that it was in another case involving Ross. The court overruled the objection. In Kirkwood's subsequent testimony, she did not say Ross was being investigated in another case. Moreover, no further objection was raised by defense counsel. We agree that an appeal based on this adverse ruling would be wholly frivolous.

A sixth adverse ruling involved the inclusion of a non-model jury instruction requested by the State to define "temporary caretaker." Relying upon *Rowland*, *supra*, counsel contends that this ruling cannot provide a meritorious basis for reversal because the instruction, even though not a model instruction, accurately defined "temporary caretaker." We agree. An appeal based on this ruling would be wholly without merit.

The final adverse ruling arose in the State's closing argument during the sentencing phase of the trial. The prosecutor referred to the testimony of Jessica Kelley, who was the lead forensic interviewer with the Texarkana Children's Advocacy Center, and then began to tell the jury what "sexual grooming" involves. Defense counsel asked to approach the

bench where he objected to such references because he did not remember Kelley testifying about grooming. The prosecutor argued that Kelley had said the word "grooming." The circuit court overruled the objection. Counsel candidly acknowledges in the no-merit brief that a search of the record revealed no mention of the word "grooming" by Kelley. Counsel notes further that it appears trial counsel was correct in his objection that Ms. Kelley never talked about sexual grooming but that he nevertheless appeared to have conceded that the State's attorney was correct. Counsel makes three arguments that the circuit court's adverse ruling would not provide a meritorious basis for appeal: (1) regardless of whether the term "grooming" was used, S.W. testified that Ross told her she was cute and he liked her clothes, which was all the prosecutor mentioned as grooming activities in closing argument; (2) the brief comments about grooming occurred during sentencing, after Ross had been found guilty; and (3) the jury had before it evidence of Ross's prior convictions, including one for sexual assault and failure to register—which underscored that at most, even if the ruling was in error, it was harmless and would not merit reversal if pursued on appeal. We agree that an appeal based on this adverse ruling would be wholly without merit.

From our review of the record and counsel's brief, we agree that the adverse rulings in this case present no meritorious grounds for reversal. We therefore affirm the convictions and grant counsel's motion to withdraw.

Affirmed; motion granted.

ABRAMSON and BROWN, JJ., agree.

*Debra Reece Johnson*, for appellant.

One brief only.

6